FRANCIS B. MUNSON *vs.* THE TOWN OF DERBY.

Where there is a change in the location of a highway, by which a portion of it is discontinued, and a new road running near to, and nearly parallel with, the old road is substituted therefor, and the old road becomes impassable or dangerous, it is the duty of the town to use reasonable precautions, by means of a railing or otherwise, to prevent travelers from going upon the old road. A neglect to do so constitutes a defect in the existing highway, within the meaning of the statute, Gen. Statutes, tit. 31, § 6.   [*One judge dissenting.*]

In an action to recover damages for an injury sustained on the discontinued portion of the highway, by driving in the night into a deep ditch dug across it, the declaration setting out the facts specifically and charging the defendant town with negligence in leaving the road unprotected, it was held that the question whether the town could be liable for an error of judgment on the part of the selectmen in relation to an acceptance of the new highway in the condition in which it was left. and in discontinuing the old highway,,had no pertinency to the case.

Where the language of the court in charging the jury upon a certain point is not sufficiently specific, no new trial will be granted if the language used, when considered with reference to the facts of the case and in connection with a subsequent part of the charge, can not reasonably be supposed to have misled the jury.

ACTION on the statute concerning highways and bridges, to recover for damages sustained through a defect in the highway of the defendant town; brought to the Court of Common Pleas for New Haven county, and tried to the jury, on the general issue, before *Bronson, J.*   The declaration contained two counts, the second of which was as follows :—

That heretofore, to wit on the first day of March, 1869, there was existing in the town of Derby a certain highway running from the borough of Birmingham in said town, in a northerly direction, and known as the River Road, which said highway it ·was the duty of said town of Derby to make and keep in good and sufficient repair so that it should be safe for travelers.   That a long time before this time, to wit six months, the Housatonic Water Company, a chartered corporation of the state, had dug a deep ditch or canal across a part of .said highway; that at the place where the injury hereinafter set forth occurred, there had been made, and at the time of the occurrence of said injury existed, an alteration of the bed or course of said highway ; that said Housatonic Water

Company had before this time, with the consent and approval of a majority of the selectmen of said town, changed the bed or course of said highway at this place, and had run said highway around this ditch or canal; that said highway was so altered and made to the acceptance and approval of the majority of the selectmen of the town; that at the time of the injury hereinafter described, there was no railing at the point of intersection of the old highway and the new course or bed of the highway made by such change as aforesaid, and nothing at this place to turn travelers from the accustomed path into the new course or bed; that it was the duty of the selectmen of said town, before they accepted and approved of said alteration, to have insisted that a sufficient railing across the old traveled track should have been erected and maintained, but that the said selectmen, in violation and neglect of their duty, did accept and approve of said alteration of said bed or course of said highway, before a sufficient fence or railing had been erected and maintained; that by reason of the want of a sufficient fence or railing across said old traveled track, and the fact that said ditch or canal existed without any guards being placed around it, the said highway was out of repair; that on the first day of March, 1869, the plaintiff was passing in and along said highway, on his lawful business, in the night time, when by reason of the want of a sufficient railing or fence, he kept straight along on the old traveled road, and fell into said ditch or canal, a distance of twenty-five feet, striking upon his head, and being severely wounded thereby, whereby the plaintiff was greatly injured and suffered much bodily pain, and was a long time sick, and spent large sums of money in effecting a cure of his wounds, and was prevented from attending to his ordinary business for a long time. And the plaintiff says he has suffered damage in the whole to the amount of five hundred dollars; whereby and by force of the statute, the defendants have become liable to pay to the plaintiff the said sum of five hundred dollars, which they have neglected to do, though often requested, and to recover which, with just costs, this action is brought.

On the trial the plaintiff claimed, and offered evidence to prove, that while traveling in the town of Derby, on the night of the 14th day of February, 1869, he received an injury by means of a defective road, which road the town was bound to keep in repair; that in going southward, in company with one Clark, a resident of Derby, along the Housatonic River, in that town, the highway upon which he was traveling, at a point from twenty to forty rods from where the injury was received, divided, both branches running in a southerly direction and nearly parallel for about half a mile, where the two branches reunited; that at the point where the two branches separated, the westerly track, (that being the track of the old highway, the easterly track being the new road,) made almost a straight line with that part of the highway which is above the point of separation; that the beds of the westerly and the easterly tracks were on the same level, and the easterly track bent to the east more out of a straight line with that portion of the highway which is above the point of separation, than the westerly track did to the west, so much so that a horse going along the road, or a person driving down the road, would naturally and as a matter of course drive straight into and along the old or westerly track; and that the paths of the two tracks at the point of separation were left in such a condition as would induce travelers, and did induce the plaintiff, to take the old and westerly, rather than the easterly branch; that there was an excavation made in the road bed of the westerly or old track, from twenty to forty rods from the point of separation, which completely cut the road bed through, leaving a ditch of about twenty feet in depth in the path of the old road or westerly track, and that this had been its condition for some months prior to the accident; that at the point of separation of the two tracks there was nothing to indicate that the westerly path was impassable; that no light or railing or warning of any character existed to warn travelers from the old and unsafe track, and to point them to the new and safe track, but that the highway was permitted to remain in such a condition as would and did naturally induce travelers to take the old and unsafe track, and that this

had been its condition for one or two months next preceding the injury; that on the night in question he and Clark were traveling down the road, about eight o'clock in the evening; that the night was dark, so that it was impossible to see distinctly, but that the trees and houses could be seen, and little if anything on the roadside besides these; that he guided the horse he was driving as well as he could, but that owing to the condition of the road and the darkness of the night he took the westerly and unsafe track at the point of separation, and continued on straight along in the traveled track of the old road until he fell into the excavation, and received the injury complained of. The plaintiff claimed that the town was liable under the second count in his declaration, for permitting the highway to remain in the condition that it was, and asked the court to instruct the jury that if they found the highway to have been left in such a condition as claimed by him, the town was liable.

The defendants claimed that the night was too dark to drive with safety; also that the plaintiff drove over this road in the morning of the same day, and saw that changes were being made there, that a dam was being built, and that waste-weirs, wings and a canal were being dug. There was no evidence except this to show that he knew of the change in the road, or that he had any knowledge of the excavation, and the defendants claimed that the evidence showed that the accident happened through the fault and negligence of the plaintiff, and therefore that he could not recover.

The defendants further claimed that the westerly track, from the point of separation to the point where the injury was received, was formerly a highway of the town but had been legally discontinued, and was not at the time of this injury a highway, and that this discontinuance had been done under and pursuant to the charter of the Housatonic Water Company. The defendants admitted that the place where the accident happened was once a traveled highway of the town, and claimed that the Housatonic Water Company was duly chartered, with power to build and construct a dam across the Housatonic River, and to build

locks, canals, and waste-weirs, to make the waters of the river available as a power, and in constructing which the company had full power and authority under their charter to alter the bed or course of any road or public highway; and to prove their power they laid in evidence the charter of the corporation. No question was raised as to the legal organization of the Water Company under its charter. The defendants introduced evidence to prove that the corporation found it necessary and convenient in constructing their dam and the canal on the easterly bank of the river, to change the bed and course of the highway from the point of separation, running along in the same general course with the old highway, but easterly of the same, until it intersected the old highway at a point about half a mile below where the accident happened; that the change was made with the consent of a majority of the selectmen of the town, and that after the new highway was worked it was duly examined by a majority of the selectmen and approved and accepted by them; that such approval and acceptance was in the latter part of May or early part of June, 1868, and from the time of such acceptance the travel was turned over the new road; that the old road bed where the accident happened had been dug away by the Water Company for many months before the accident happened, and was wholly impassable. The plaintiff conceded that the precise place where the accident happened was on the westerly track, from twenty to forty rods distant from the point of separation, and that at this point the two tracks were about two rods apart; while the defendants claimed that they were five rods apart. From these facts the defendants claimed that the place where the injury was received was not a public highway of the town, and that they could not be made liable for any accident happening thereon, and also claimed, and asked the court to charge the jury, that this action was founded on the 6th section of chapter 1st, of title 31st of the Revised Statutes, relating to a defective highway, and not on the 8th section of the same chapter, relating to railings upon highways; and the court so instructed the jury.

The defendants further asked the court to instruct the jury, " that if the acts of the Water Company in changing the road bed were done according to the powers conferred upon the corporation by its charter, and such changes in the road bed were in good faith and without fraud approved by the selectmen of the town, the defendants could not be liable in this action for an accident happening on a portion of the discontinued road, even though the jury should find that the selectmen erred in judgment in approving of such change." The court charged the jury that the above claim was correct as applicable to the first count of the declaration, but did not otherwise so charge. The defendants asked the court to charge " that the action is brought to recover damages for injuries claimed to have been received by the plaintiff, by reason of a defective road which the town of Derby was bound to keep in repair, and not upon the section of the statute requiring a sufficient railing," and the court so charged.

The defendants further asked the court to charge " that the plaintiff must prove to the satisfaction of the jury, that the precise place where the injury was received was a public highway of the town of Derby." This the court omitted to charge. Also " that the plaintiff must prove that the highway where the accident happened was defective and out of repair by the fault and negligence of the defendants, and that the plaintiff's injury was caused by that defect." The court charged the jury that it was not necessary in all cases that the place where the injury was received should be a part of a highway, but that the injury must have happened because the highway was out of repair and defective by the fault and negligence of the defendants, and that the plaintiff's injury must have been caused by that defect.

The defendants also requested the court to charge the jury, " that towns are not obliged to fence their roads against adjoining land, or maintain any fence or railing on the sides of highways, for the purpose of preventing injuries outside the limits of the highway, unless the sides of such parts of such highways are so made or raised above the adjoining ground as to endanger the safety of travelers ; that if the road bed

of the new highway at the point of separation from the old or former highway in question, was not raised above the road bed of the old highway, the defendants were not bound by law to erect or maintain a railing or fence, and were not under any circumstances liable for injuries happening outside of the limits of the highway."

The court charged the jury that towns are not ordinarily bound to fence or rail their highways, and are not generally liable for injuries received outside the limits of the highway, but that under some circumstances towns might be liable for injuries received outside the limits of the highway, and that if the jury should find, as claimed by the plaintiff, that the new and the old road ran in the same general direction, and that the defendants had left the new highway at the point of separation from the old highway, without any guard or railing, and in such a condition as would be well calculated to mislead persons of ordinary prudence and draw them from the new road into the old highway and unsafe road, under the belief that they were still on the public highway, then there was nothing in the law, as claimed by the defendants on this part of the case, to prevent a recovery, and that if the jury should so find, their verdict should be for the plaintiff on the second count; if they should not so find, then their verdict should be for the defendants on both counts.

The jury returned a verdict for the plaintiff on the second count in the declaration, and for the defendants on the first count. The defendants moved for a new trial for error in the charge, and in the refusal to charge as requested.

*Wooster* and *Torrance*, in support of the motion.

The claim that the town is liable is placed upon two grounds :—1st, that the selectmen had wrongfully accepted and approved of the change in the highway ; 2d, that there was no fence on the side of the then existing highway, and that there was a ditch or canal in an adjoining field. Upon the points presented by such a case the defendants asked the court to charge the jury, as detailed in the record, that, if the alteration in the road bed had been legally made by the

Housatonic Water Company under the authority of its charter, and such change had been, in good faith, accepted and approved by the selectmen, the town would not be liable in this action for a defective road for an accident happening on a portion of the discontinued road, even though the jury should find that the selectmen erred in judgment in approving of such change.

1. The court erred in refusing to charge that this claim was correct and applicable to the second as well as to the first count in the declaration. The jury ought to have been instructed that they could not reasonably infer that the defendants were liable because the selectmen erred in judgment. The duty of the selectmen in accepting the road was of a judicial nature, and they and the town are exempt from all responsibility by action for the manner in which such duty was performed. *Jones* v. *City of New Haven*, 34 Conn., 14.

2. It was conceded that the precise place where the accident happened was on a part of the discontinued highway from twenty to forty rods from the point of divergence from the existing highway. On this state of facts the defendants asked the instructions of the court. The court charged that it was not necessary in all cases that the place where the injury was received should be a part of the highway, but that the injury must have happened because the highway was out of repair and defective by the fault and negligence of the defendants, and that the plaintiff's injury must have been caused thereby. This charge was not sufficiently specific. The first part of it was calculated to mislead the jury, unless limited by other proper instructions which were not given. Towns are not liable absolutely for all defects in their highways. But the charge of the court impliedly holds that towns are liable for all defects existing within and without the limits of the highway; which is not law. *Chidsey* v. *Town of Canton*, 17 Conn., 475; *Hewison* v. *City of New Haven*, 34 id., 142; *Morris* v. *Platt*, 32 id., 82.

3. The court erred in refusing to charge as asked for in the last request of the defendants. The statute creates and measures the liability of towns in regard to highways. Towns

VOL. XXXVII.—39

are not bound to fence the sides of their highways except in cases where the statute has laid this duty upon them, and the present case is not within the statute. *Chidsey* v. *Town of Canton*, 17 Conn., 475; *Hewison* v. *City of New Haven*, 34 id., 142; *Blodgett* v. *City of Boston*, 8 Allen, 237; *Richards* v. *Inhabitants of Enfield*, 13 Gray, 344.

4. The court erred in the charge it finally made as set forth in the record. The court here states the law incorrectly, and the jury were misled thereby. Towns are not bound to erect or maintain fences to prevent travelers from straying from the highway, for the reason that the legislature has not seen fit to impose this duty upon them. *Jones* v. *City of New Haven*, 34 Conn., 10; *Sparhawk* v. *City of Salem*, 1 Allen, 30; *Rice* v. *Town of Montpelier*, 19 Verm., 470; *Tisdale* v. *Inhabitants of Norton*, 8 Met., 388; *Hounsell* v. *Smith*, 7 Com. Bench, 729; *Hewison* v. *City of New Haven*, 34 Conn., 140; *Smith* v. *Inhabitants of Wendell*, 7 Cush., 500; *Howard* v. *Inhabitants of North Bridgewater*, 16 Pick., 189. The charge is objectionable in form as well as substance. *Hoyt* v. *Sturges*, 28 Conn., 538.

*H. Stoddard*, contra, cited *Dimock* v. *Town of Suffield*, 30 Conn., 129; *Hewison* v. *City of New Haven*, 34 Conn., 136; *Davis* v. *Town of Hill*, 41 N. Hamp., 329; *Morse* v. *Town of Richmond*, 41 Verm., 441; *Glidden* v. *Town of Reading*, 38 id., 52; *Ireland* v. *Oswego &c. Plank Road Co.*, 13 N. York, 526; *Palmer* v. *Inhabitants of Andover*, 2 Cush., 600; *Coggswell* v. *Inhabitants of Lexington*, 4 id., 307; *Jones* v. *Inhabitants of Waltham*, id., 299; *Collins* v. *Inhabitants of Dorchester*, 6 id., 396; *Hoyden* v. *Inhabitants of Attleborough*, 7 Gray, 338; *Willey* v. *Town of Portsmouth*, 35 N. Hamp., 303; *Chamberlin* v. *Town of Enfield*, 43 id., 356.

CARPENTER, J. The plaintiff claimed that he sustained an injury in consequence of a defective highway in the town of Derby.

The circumstances were these. The Housatonic Water Power Company, by virtue of authority conferred upon it by

its charter, changed a portion of a highway in the town about one-half mile in length, by making a new track or pathway near to, and nearly parallel with, the old track.   This change was approved by the selectmen of the town.   The Water Power Company opened a ditch about twenty feet deep completely across the bed or traveled part of the old highway. The old highway was more nearly in the line or direction in which the plaintiff was traveling than the new.   At the point of divergence the road bed was in such a condition that a stranger, or one not well acquainted with the locality, would be quite as likely in the night season to take the old highway as the new.   There was no railing or other indication that the old road was unsafe.   The plaintiff passed over the road in company with another man on the morning before the accident happened, and that was the only evidence that he knew of the situation of the road.   In returning, the same evening, the horse followed the line of the old highway, and the plaintiff was precipitated into the ditch, whereby he was injured.   The plaintiff obtained a verdict in the Court of Common Pleas, and the defendants move for a new trial, on the ground of alleged errors in charging the jury, and in refusing to charge as requested.

There are two counts in the declaration.   The first alleges, in general terms and in the usual form, that the injury was received while traveling upon and along the public highway. The second alleges substantially the facts above stated.   The verdict was for the plaintiff on the second count, and for the defendants on the first count.

No question is made in this court as to contributory negligence in the plaintiff; but the question is, in general terms, are the defendants liable under the circumstances above stated ?   The court, in response to a request made by the defendants' counsel, charged the jury that the action was not founded on the 8th section of the statute, requiring the town to erect railings on the sides of bridges, and parts of the highway so made or raised above the adjoining ground as to endanger the safety of travelers; but was founded on the 6th section of the act, which provides that if any person shall

lose a limb, break a bone, or receive any bruise or bodily injury by reason of any defective bridge or road, the town whose duty it is to keep the road or bridge in repair, shall pay to the person so injured just damages. Was the then existing highway defective within the meaning of this statute ?

It is not contended that there was any structural defect, or want of proper repair, in the highway itself. There was therefore no danger to the plaintiff arising from the negligence of the defendants, so long as he kept within the limits of the highway ; but the danger consisted in his being drawn, unwittingly, from the highway, and induced to travel in and along the route of the old, discontinued and dangerous highway. The case is a novel one in some of its aspects, and presents a question differing somewhat from any that has hitherto arisen in this state.

1.　The defendants asked the court to charge the jury " that if the acts of the water company in changing the road bed, were done according to the powers conferred upon them by their charter, and such changes in the road bed were in good faith and without fraud approved by the selectmen of the town, the defendants could not be liable in this action for an accident happening on a portion of the discontinued road, even though the jury should find that the selectmen erred in judgment in approving of such change." The court charged the jury that the above claim was correct as applicable to the first count of the declaration, but did not otherwise so charge. We think this request was clearly inapplicable to the second count. That count does not base the liability of the defendants upon any error in judgment, or upon any negligence in respect to the condition of the bed of the old road at the precise spot where the accident happened ; but the negligence consisted in leaving the new road without a sufficient guard to prevent travelers from going astray upon the old.

2.　The defendants further requested the court to charge " that the plaintiff must prove to the satisfaction of the jury that the precise place where the injury was received was a

public highway of the town of Derby," which the court
omitted to charge ; " and that the highway where the accident
happened was defective and out of repair, by the fault and
negligence of the defendants, and that the plaintiff's injury
was caused by that defect." The court charged the jury that
it was not necessary in all cases that the place where the
injury was received should be a part of a highway, but that
the injury must have happened because the highway was out
of repair and defective by the fault and negligence of the
defendants, and that the plaintiff's injury must have been
caused by that defect.

The objection to this part of the charge is, that it is not
sufficiently specific, and was calculated to mislead the jury,
unless limited by other proper instructions. There would be
force in this objection if the charge in this respect stood alone.
But considering this part of the charge in its application to
the case in hand, and in connection with the charge of the
court in response to the defendants' fourth request, as stated
hereafter, in which the court carefully and properly applied
the substance of the charge now under consideration to the
circumstances of this case, we are of the opinion that the
jury could not have been misled by it, and that the defendants
have thereby sustained no injury.

3. The defendants further requested the court to charge,
" that towns are not obliged to fence their roads against ad-
joining land, or maintain any fence or railing on the sides of
their highway, for the purpose of preventing injuries outside
the limits of the highway, unless the sides of such parts of
such highways are so made or raised above the adjoining
ground as to endanger the safety of travelers ; and that if the
road bed of the new highway at the point of separation from
the old or former highway in question, was not raised above
the road bed of the old highway, the defendants were not bound
by law to erect or maintain a railing or fence, and were not
under any circumstances liable for injuries happening outside
of the limits of the highway. The court charged the jury
" that towns are not *ordinarily* bound to fence or rail their
highways, and are not *generally* liable for injuries received

outside the limits of the highway, but that under *some circumstances* towns *might* be liable for injuries received outside the limits of the highway, and that if the jury should find as claimed by the plaintiff, that the new and the old road ran in the same general direction, and that the defendants had left the new highway at the point of separation from the old without any guard or railing, and in such a condition as would be well calculated to mislead persons of ordinary prudence, and draw them from the new road into the old and unsafe road under the belief that they were still on the public highway, then there was nothing in the law to prevent a recovery, and that if the jury should so find, their verdict should be for the plaintiff on the second count; if they should not so find, then their verdict should be for the defendants on both counts."

The first part of this request, as a general proposition, is well enough. The latter part, which would seem to establish it as a rule precluding the possibility of any exception to it, is wrong. Again: the words " railing" and " fence," as used in the 8th section of our statute, seem to imply a barrier of sufficient strength to prevent travelers, under ordinary circumstances, from going off a bridge or embankment. If the defendants' counsel used the words in that sense, we see no objection to the request, provided it had any application to the case; for we do not suppose it was necessary for the defendants to erect any such barrier at this place. A written or printed notice that the road was discontinued, brought home to the knowledge of a party who knowingly attempted to pass over the road, would have been sufficient. But if they meant by it, as we suppose they did, that the defendants were under no obligations, by means of a fence, railing, or otherwise, to inform the public that the old highway was discontinued and unsafe, then we think they were clearly wrong.

And that brings us to consider this question,—was the want of such notice a defect in the new highway?

The object and purpose of the statute was to compel towns to keep their highways reasonably safe for travelers. The dangerous character of this highway, taken as a whole, can

admit of no question. Strangers, and others acquainted with the road as it was, but unaware of the change, passing over it in a dark night, would be almost certain to be drawn from the road, and to meet with an accident at the risk of life itself. The road was therefore unsafe. Was there any excuse for it? The expense of some device whereby the public could have been effectually warned of the danger, would have been very slight. Can it be presumed that so great a danger, resulting probably in such serious consequences, and so easily guarded against, was not embraced in the mischief which the legislature intended to prevent? The fact, upon which the defendants so much rely, that the place where the accident happened was from twenty to forty rods from the point of divergence of the two roads, and from two to five rods distant from the nearest point in the new highway, seems to us to be entitled to little or no weight. The danger did not materially depend upon the proximity of the ditch to the new highway, nor was it to any appreciable extent diminished by its distance from it. If, at certain times, the traveler gets upon the wrong road, the accident will be sure to happen unless prevented by some unexpected event.

The road as it was therefore was a trap, and it was manifestly the duty of the town to use all reasonable precautions to prevent strangers, and the unwary, from being caught in it. It must be borne in mind that the question does not relate to the duty of towns to fence highways generally, or to use other precautions to prevent travelers from going astray. The jury were properly told that no such duty rested upon them. Ordinarily there can be no danger to the traveling public from the want of such a fence. But when the public, for a long time, have been accustomed to pass over a given piece of highway, and the same becomes impassable or dangerous from any cause, so that it is necessary to divert public travel therefrom, good sense, as well as common prudence and the dictates of humanity, requires that some means should be adopted whereby the public shall be effectually warned of the danger. That not having been done, the discontinuance was on paper merely. There was no real, actual discontin-

uance. The old road was not closed, but was apparently an open, public highway still. A road cannot be discontinued by a mere vote. Something more is requisite. The public must be actually excluded therefrom. Until that is done the liability of the town, as to all persons without notice, remains the same. So in this case. Merely opening a new track and declaring the old track discontinued, was clearly insufficient. It was negligence in the selectmen to approve the change and leave the two roads in that condition. A fence, or its equivalent, to keep the public from the old track, was essential. It was their duty to see not only that the new road was in proper condition, but that the two combined did not endanger the lives and property of those using the new. Failing in this was not merely an error in judgment, it was negligence; and the town is liable for the consequences of that negligence.

The principle underlying this decision is not now established for the first time in this state. Towns are required to keep the limits of the highway outside of the traveled path reasonably free from objects which are calculated to frighten horses of ordinary gentleness. *Dimock* v. *Town of Suffield,* 30 Conn., 129; *Hewison* v. *City of New Haven,* 34 Conn., 136. If objects like these constitute defects in the highway, surely a highway so situated that travelers will be likely to be allured from it into dangerous paths, must be defective. The danger in the one case is as real as in the other. The case of *Thorp* v. *Town of Brookfield,* 36 Conn., 320, was in some respects like the present. A portion of a bridge had been carried away by a freshet, so that it was impassable. It was condemned, and the selectmen by means of a fence across the highway on both sides, attempted to turn the travel from it. The court held that they were guilty of negligence in not continuing the barrier, so as effectually to warn the public of danger. See also *City of Norwich* v. *Breed,* 30 Conn., 535, where the same principle is distinctly recognized.

A brief reference to some of the authorities in other states will show what the law is elsewhere. In *Ireland* v. *The Oswego, Hannibal & Sterling Plank Road Company,* 13 N.

York, 526, the facts were these. The defendants were authorized to use an existing highway for the construction of their road. In grading for the plank road the defendants, within the bounds of the former highway, excavated the earth so as to make a new track lower than the former traveled path. The new track diverged from the traveled pathway of the former highway. The two tracks were on a level at the place where they separated, and each was of sufficient width at that place to admit of traveling with a carriage; but the old pathway gradually became higher than the new track, and grew narrower until it came to a point at a place where it was elevated from two to three feet above the new track. The evidence tended to show that the plaintiff, driving along in the evening, kept the old path, and was thrown from his wagon and seriously injured. The Court of Appeals held that the defendants were liable. Denio, C. J., says :—" Where a road is so constructed or altered as to present at one point two paths, both of which exhibit the appearance of having been used by travelers, and one of them leads to a dangerous precipice, while the other is quite safe, it is the duty of those having charge of the road to indicate, in a manner not to be mistaken by day or by night, that the unsafe path is to be avoided; and, if it cannot be otherwise done, to put up such an obstruction as will turn the traveler from the wrong track."

In *Coggswell* v. *Inhabitants of Lexington*, 4 Cushing, 307, it appeared that a post stood within the limits of the general course and direction of the travel, and made traveling dangerous; but whether within or without the limits of the highway did not appear. The court held that the town was liable in either case, and that if the post was out of the limits of the highway, so that they could not lawfully remove it, it was their duty to place such a fence, or other barrier, between it and the road, as would have rendered the road safe. The same principle was recognized in *Collins* v. *Inhabitants of Dorchester*, 6 Cush., 396, and in *Hoyden* v. *Inhabitants of Attleborough*, 7 Gray, 338.

The case of *Davis* v. *Hill*, 41 N. Hamp., 329, is an author-

ity directly establishing the proposition that " the want of a sufficient railing, barrier and protection to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stones or other dangerous obstruction without its limits, but in the general direction of the travel thereon, may properly be alleged ·as a defect in the highway itself." The same doctrine is supported by *Willey* v. *Portsmouth*, 35 N. Hamp., 303.

It is true the case now before us is not, in all respects, identical with these cases. The difference, however, consists mainly in the distance of the excavation from the new highway. We have endeavored to show that the matter of· distance was immaterial. If we are correct in this then the principle involved in all the cases is the same.

For these reasons a majority of the court are satisfied that there should be no new trial.

In this opinion BUTLER, C. J., FOSTER and SEYMOUR, Js., concurred.

PARK, J., was of opinion that, as the plaintiff's injury was owing wholly to his going astray from the public highway upon a road that had been legally discontinued in accordance with the provisions of the charter of the Housatonic Water Company, and was not connected in any manner with public travel upon a public highway, he could not recover. He regarded the cases hitherto decided, where·towns have been held liable, as all cases of injury to persons traveling on the highway itself. And as confessedly towns are not liable any further than some statute imposes a liability, he considered it necessary to a liability on the part of the defendants that there should be some statute requiring towns to erect fences or other barriers, or give public warning in some manner, to prevent travelers on public roads from going off the road to their injury ; the statute requiring a railing to be erected by towns where the sides of the road are raised above the adjoining land having no application to a case like this, where the place of danger was remote from the highway itself.