THOMAS LUTTON, ADMINISTRATOR, *vs.* THE TOWN OF
VERNON.

Hartford Dist., Jan. T., 1892.   CARPENTER, SEYMOUR, TORRANCE, FENN
and ROBINSON, Js.

A highway thirty-two feet wide, and with its roadbed smooth and level,
  was bounded on one side by a row of large trees about twenty feet
  apart, outside of which, upon private ground, a sidewalk had been made,
  beyond which the ground sloped rapidly down to a mill-pond.   There
  was no railing between the highway and the pond.   A person travel-
  ing on the highway in a dark night backed his wagon off the highway
  through the line of trees and over the sidewalk into the pond, where
  he was drowned with his horse.   The tracks of his wagon showed that
  he had been driving in an irregular course along the other side of the
  highway.   His object in backing his wagon across the highway was
  not known, and no explanation could be given.   In a suit brought by
  his administrator against the town, it was held that the defendant was
  not entitled to a charge to the jury that the conduct of the decedent,
  unexplained, would justify them in finding that he was guilty of such
  contributory negligence as to defeat the right to recover, as the ques-
  tion was wholly one of fact for the jury to determine from all the evi-
  dence in the case.
The burden of proving that the conduct of the decedent, under all the
  circumstances, was that of a reasonably prudent man, was upon the
  plaintiff.
Assuming that it was so, he was entitled to the same protection, and had a
  right to act upon the same presumptions, as if he had been passing
  along in the line of the traveled path.   The mere fact that the accident

happened while he was backing across, and not while he was traveling along the highway, made no difference in this respect..

And held that the court properly charged the jury that the fact that other persons had passed and repassed for several years over the highway at the place in question without accident, was not evidence that the town had performed its duty in making the highway reasonably safe.

To make such experience a proof that the highway was reasonably safe it must have involved a use of the road substantially like that in the case before the court.

It is the duty of a town to keep its roads reasonably safe for travel by night as well as by day, and the public have a right to presume that they are so.

The law (Gen. Statutes, § 2672,) imposes upon towns the duty of protecting travelers by a barrier of some kind where the highway is so much above the adjoining ground as to require it. If the row of trees in this case was a sufficient barrier no other was necessary; but it was wholly a question for the jury.

[Argued January 6th—decided April 1st, 1892.]

ACTION to recover for the loss of a horse, harness and wagon through a defect in a highway in the defendant town. The plaintiff sued as administrator of Joseph Lutton, who lost his life by the same accident. The suit was brought to the Superior Court in Tolland County, and tried to the jury before *Sanford, J.* Verdict for the plaintiff, and appeal by the defendant for errors in the rulings and charge of the court. The case is fully stated in the opinion.

· *A. P. Hyde* and *C. Phelps,* for the appellant.

1. The court erred in refusing to charge the jury that they might take into consideration the fact that the highway in question had remained in practically the same condition for a period of about twenty years. The question whether a natural or artificial barrier on the side of a highway, or any other construction of a highway, renders it safe or not, depends largely upon experience. All expert testimony is admissible only on the ground that experience has shown to the witness that a certain condition of things is safe or unsafe. Towns are required not to insure the safety of travelers, but to use ordinary and reasonable care in render· ing the road reasonably safe for travelers who attempt to

pass along the highway in the use of reasonable care on their part. Here it was claimed that the row of trees was a reasonable protection for travelers in the exercise of ordinary care. That it would have been admissible to show that this row of trees was not protection, by showing that people in traveling the ordinary track at this place had frequently, while driving with ordinary care, passed through and met with accident, can hardly be denied. On the other hand the fact that this was a main thoroughfare, traveled by day and night by teams and vehicles, and that no team had ever passed through between these trees, was some evidence at least to be considered by the jury as to whether or not it was reasonably safe. Our contention is, not that the evidence was conclusive, but that the jury had a right to consider it. *House* v. *Metcalf*, 27 Conn., 631, 636; *Calkins* v. *City of Hartford*, 33 id., 57. In the case of *Bryant* v. *Town of Randolph*, (6 N. York Supplement, 1889, 438; 60 Hun, 581;) the court holds that, " where the danger arose from the general construction of the highway, which had remained in the same condition for twenty-seven years, the jury may take that fact into consideration in deciding the question of negligence."

2. The court erred in refusing to charge the jury that if Lutton deliberately backed his horse, at right angles, across the highway in question, between the trees, and across the sidewalk, and down the embankment into the mill-pond, a distance of some sixty feet, that fact, *unexplained*, would be *prima facie* evidence of contributory negligence. The evidence showed that Lutton had passed to a point opposite the last row of the trees thirty-two feet east of the row on the easterly side of the highway; that from that point north to the bridge the road was broad, free and clear; and that only about sixty feet distant, on the same side of the highway, was the boarding house, on the front of which was a lamp with a reflector, which lighted up the highway beyond the row of trees to the bridge. Having reached this point, whence he could proceed with apparent safety over a smooth road sufficiently lighted, for some unaccountable reason he

stopped his horse and deliberately backed it across the road a distance of some fifty feet into the pond. There was no explanation in the evidence why this strange course was taken except what might be inferred from the fact that, starting from a point some two hundred feet south of where he stopped his horse, he drove in a zigzag course, in and out of the regular traveled path, until he arrived at that point. Why this irregular course was taken we can only conjecture. It may be that the horse was endeavoring to regain the regular traveled path while the driver was insisting, on reining him to the east; at any rate it would seem to indicate a degree of bewilderment from some cause in the mind of the driver that led to this irregular driving. It is clear that his conduct in stopping the horse at this point was so unusual and unreasonable that it requires some explanation to satisfy a court and jury that he was in the exercise of ordinary care. If he had become bewildered and did not know his precise location, a prudent man would have got out of his wagon and made inquiries at the house. The house was only a few feet distant, and was well lighted; by a simple inquiry he could have found the course he ought to pursue. It is said it was a dark night. Admit it. In the case of *Bennett* v. *N. York, N. Haven & Hartford R. R. Co.*, 57 Conn., 422, the court held that on a dark night like this, the slightest failure to exercise care is regarded as gross negligence. Undoubtedly Lutton had a right to back his horse across the road, provided he would assume the risk of so doing; but he had no right to do so at the risk of the defendant. He was then in a place of safety; the road ahead was well lighted and clear; and that he was in the exercise of due care is a matter that must be shown affirmatively by the plaintiff.

3. The court erred in charging the jury, in view of the facts of the case, that Lutton had a right to expect that the defendant town had so discharged its duty, as to erect barriers sufficient to prevent him and his team from leaving the highway in this manner at the point of accident. The whole charge, read together, was an instruction to the jury that it was the duty of the town to erect a fence or barrier,

so that Lutton, in attempting to back across the road, at right angles therewith, in the night-time, could not have got off from the traveled path or upon any adjoining ground where danger might exist. We claim that this is not the law. There is no statutory requirement to protect a party not traveling along a highway, but attempting to cross it at right angles, from going upon adjoining ground where there are pitfalls, and we claim that no traveler on the highway has the right to assume that any such barrier has been erected. *Beardsley* v. *City of Hartford*, 50 Conn., 545. The road is to be made reasonably safe for persons attempting to pursue their way on the highway. Neither is this doctrine to be sustained because it is the practice of towns in the management of highways to so guard them by fences or railings that a party who is so disposed cannot get off from the traveled path upon the adjoining land. There are few miles of road in country towns or villages where there are any such guards. It will be noticed that there is nothing in the charge referring at all to the row of trees, which, as insisted by the defendant, was a sufficient protection to travelers along the highway in its regular traveled path to protect them from danger.

*G. G. Sill* and *J. L. Hunter*, with whom was *H. O'Flaherty*, for the appellee.

TORRANCE, J. This is an action brought by the plaintiff as administrator, claiming damages for the loss of a horse, harness and wagon, by a defective highway in the town of Vernon. In the Superior Court judgment was rendered for the plaintiff upon a verdict in his favor, and from that judgment the defendant brings this appeal. The assignments of error are based entirely upon certain parts of the charge of the court to the jury which are set out in the record.

The record shows that the plaintiff claimed to have proved, in substance, that at the time of the accident, which occurred at night, the highway in question was out of repair, by reason of the want of a sufficient railing or fence on the west

erly side thereof; that the accident happened in consequence of such defect; and that the plaintiff's decedent, one Joseph Lutton, was not guilty of contributory negligence.

The defendant claimed to have proved, in substance, that at the time of the accident, and for more than twenty years prior thereto, a line of trees consisting of large elms and maples, seventeen in number, standing from nineteen to twenty feet apart, constituted the westerly boundary of the highway at the point where the accident happened; that on the east of the line of trees there was a smooth and level roadway of about thirty-two feet in width; that just west of the trees the land belonged to private individuals, who had constructed thereon a sidewalk of about eight and one half feet in width; that just west of this sidewalk was a grassy slope extending down to a mill-pond, " being a steep descent of some five and one half feet between the westerly side of said sidewalk and the bottom of the slope; that the row of trees was sufficient protection and safeguard against any danger of passing over the sidewalk, and that no team had ever passed through the row of trees to the sidewalk, and could not, except with great difficulty, and by making an abrupt angle from the traveled path, get between the trees;" and that the highway, at the point in question, was reasonably safe for the passing of teams.

The plaintiff claimed to have proved that there was danger at this point; that parties could drive between the trees and across the sidewalk into the pond; and that a railing at this point was necessary to make the highway reasonably safe.

The plaintiff also claimed to have proved that when the accident happened it was so dark that it was impossible " to distinguish the row of trees or designate where the westerly boundary of the road was lined by the row of trees;" while the defendant claimed to have proved that the trees could be easily seen, both because the night was only moderately dark, and because of the lights in houses near by the place of the accident.

The defendant further claimed to have proved that Lut-

ton, on the night in question, began to deviate from the actual traveled path of the highway, which ran near the row of trees, some two or three hundred feet south of where the accident took place, until he had driven to the easterly side of the road, about opposite the northernmost tree of the row, where he stopped his horse; that he then backed his horse and wagon across the highway to the row of trees, thence between the last two trees of the row and across the sidewalk, and was thence precipitated into the mill-pond, where he and the companion riding with him, and the horse, were drowned.

These, in substance, were the claims of the parties in the court below, upon which the court charged or refused to charge the jury as set forth in the record.

The assignments of error may for convenience be fairly grouped under four main points, as is done by the counsel for the defendant in the recapitulation contained in their printed brief.

The first relates to the refusal of the court to charge the jury that they might take into consideration the fact that the highway, at the time of the accident, was in substantially the same condition as it had been for twenty years, and no accident had happened thereon.

Upon this point the court charged that the fact that other persons had passed and repassed for a greater or less number of years over the highway at the place in question without accident, or that other towns had similar or worse places on their highways on which no accident had occurred, was not evidence that the defendant had performed its duty in making this highway reasonably safe; and refused to charge the defendant's third request, which reads as follows: "Where the construction of a highway has remained in the same condition for more than twenty years, and no accident has happened thereon, the jury may take that fact into consideration in deciding the question of negligence." The request and the charge presumably were based upon certain evidence in the case, but what the evidence was cannot perhaps be clearly determined from the record.

Lutton v. Town of Vernon.

It does appear therein that the defendant claimed to have proved that for more than twenty years prior to the accident the highway at the point in question had remained substantially as it was at the time of the accident, and that no team had ever passed through the row of trees to the side-walk. It does not appear that any evidence was offered that other towns had places upon their roads similar to or worse than the one in question in the case at bar, on which no accident had occurred; if so, then that part of the charge which excluded such evidence from the consideration of the jury did the defendant no harm.

So far as the record discloses, the only evidence on the point now under consideration was of the nature indicated by the language of the defendant's third request, and it seems to have been admitted without objection on the part of the plaintiff.

So far as we can see from the record, the evidence was, in substance, that no accident had happened at the point in question for the want of a railing or barrier. Presumably the object of the evidence was to show that actual use had tested the way for twenty years, and shown it to be safe. "But to reach that object the use and experience of others relied upon must have been of a nature to have tested the alleged defect; or in other words, it must have been a test and use substantially similar to that of the plaintiff." *Taylor* v. *Town of Monroe*, 43 Conn., 42. Within the principle laid down in the case here cited, the evidence in question is clearly inadmissible.

There is nothing whatever in the record to show "that the use and experience of others relied upon" was at all or substantially similar to that of the plaintiff's decedent, or even that the defendant claimed that it was. It is true, the evidence in question seems to have been admitted without objection on the part of the plaintiff, but this fact alone did not preclude him from afterwards insisting that the jury ought not to take it into consideration. Though admitted without objection, such evidence was still irrelevant, and we

think the court committed no error in telling the jury that they ought not to consider it.

This disposes of the second and fourth assignments of error. The second main point relates to the refusal of the court to charge the seventh request of the defendant, which reads as follows:—" If the jury find that on the night that the injury happened the plaintiff's decedent was traveling on the easterly side of the highway, until he came to a point more than thirty feet easterly from the row of trees which formed the western boundary of the highway, and then stopped his horse and backed his horse and wagon across the road to the row of trees, and then between the trees and across the sidewalk, being about eleven feet, and then down the bank into the pond, this fact of itself, unexplained, will justify the jury in finding that he was guilty of such contributory negligence as to defeat the right to recover in this case."

This request was properly refused, because, upon the facts claimed by both parties, the question whether the plaintiff's decedent had been guilty of contributory negligence was clearly one of fact for the jury to determine from all the evidence in the case, and not one of law, to be determined upon the facts embodied in a request which obviously contains only a partial statement of the facts. A question of fact cannot thus be changed into one of law by a statement even of the entire evidence and evidential facts.

In support of our conclusion on this point we content ourselves with citing without comment or further discussion the following decisions of this court. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Williams* v. *Town of Clinton*, 28 id., 264; *Dexter* v. *McCready*, 54 id., 171; *Fiske* v. *Forsyth Dyeing Co.*, 57 id., 118; *Farrell* v. *Waterbury Horse R. R. Co.*, 60 id., 239.

This question of the contributory negligence of the plaintiff's decedent was properly left to the jury as a question of fact. The law applicable to the facts bearing upon that question is fairly and fully stated in the fourth, fifth and

sixth requests of the defendant, which the court read to the jury as part of its charge.

The burden of proving that the conduct of Lutton, under all the circumstances, was that of a prudent man, was properly put upon the plaintiff by such a charge, and this included an explanation of such conduct so far as the same was necessary to show that it was that of a man of ordinary prudence. The defendant however complains in his brief, because, in commenting upon the evidence bearing upon this question of contributory negligence, the court used the language quoted under the sixth assignment of error, ending with these words:—" But what was the occasion for stopping at this point neither of the unfortunate victims is here to explain to us, and there is no evidence probably that can ever be obtained to explain it."

The defendant says in his brief that the court by this language seemed to leave it for the jury to conjecture, or else to imply, the reason or occasion of the stopping, or to leave it for the defendant to prove. We think this is not so. All the court could have meant by this language, and we think all the jury could have fairly understood from it, was that no living witness could probably be produced on that point, and that all the evidence attainable thereon had probably been placed before the jury. The court did not mean, and cannot fairly be understood to have meant, that there was no circumstantial evidence in the case on this point, for its charge thereon is based upon the existence of such evidence.

With reference to that evidence the jury were distinctly told that the plaintiff must prove that his decedent had conducted himself as a reasonable and prudent man would have done under the like circumstances, and that the accident was due to the negligence of the defendant without any contributory negligence on the part of the decedent. In other parts of the charge the burden of proving all the facts bearing on the question of Lutton's contributory negligence, thus including, as we have said, the explanation of his entire conduct on the occasion in question, is, as we have seen,

clearly and distinctly placed upon the plaintiff. Even then, if the part of the charge here objected to, standing alone, was susceptible of the construction put upon it by the defendant, it would be no ground for a new trial, since it is manifest upon the whole record that the jury could not have been misled by it. *Munson* v. *Town of Derby*, 37 Conn., 309; *Knowles* v. *Crampton*, 55 id., 336.

This disposes of the fifth and sixth assignments of error.

The third main point is that the court erred in charging the jury, in view of the facts in this case, that Lutton had a right to expect that the town had erected barriers sufficient to prevent him and his team from leaving the highway in the manner he did at the time of the accident. There is nothing on the record to show that the court charged the jury upon this point even substantially as here stated.

Upon this point the court, adopting the first and sixth requests of the plaintiff, said, in substance, that Lutton might, while exercising due care, act on the belief or presumption that the town had discharged its duty to keep the highway reasonably safe for travelers by night as well as by day, and that sufficient railings, if necessary, or barriers, had been erected on such parts of the way as were so made or raised above the adjoining ground as to be unsafe for travelers using the traveled path.

There is nothing in the record to show that Lutton was familiar with this road, or that he had any previous knowledge of the proximity of the embankment or the pond to the highway, or that the latter was or was not sufficiently guarded. There was no claim that the alleged defect was caused by any sudden action of the elements, or by the acts of individuals, or that the town had not had sufficient notice of its existence.

Why then might not the plaintiff's decedent, in a case like the present, presume, and act on the presumption, while himself exercising due care, that if the town had any duty to perform in reference to this highway at this point, it had performed it? We think he was fully justified in so doing upon principle and authority.

"The traveling public have a right to suppose that there is no dangerous impediment or pitfall in any part of the street, without a light placed to give warning or a suitable railing to protect from it." *Durant* v. *Palmer*, 29 N. Jer. Law, 544. "It was their duty to keep their roads reasonably safe for travel by night as well as by day, and the public had a right to presume they were so." *Drew* v. *Town of Sutton*, 55 Verm., 586. See also the case of *Barry* v. *Terkildsen*, 72 Cal., 254, and *Jennings* v. *Van Schaick*, 108 N. York, 530, to the same point. "A traveler upon a public highway without knowledge of defects in bridges forming part thereof, and himself exercising proper diligence, has a right to presume that such bridges are in a safe condition, and to act on that presumption." *Board of Commissioners* v. *Legg*, 110 Ind., 479. We see nothing objectionable in this part of the charge.

The fourth and last point is that the court erred in telling the jury that it was the duty of the town to so maintain barriers in the night season, that a person could not by backing directly across the road at right angles get upon adjoining land where there were dangers or pitfalls.

If the record disclosed that any such charge, either in substance or in form, had been given without qualification, the question whether the court therein erred would merit serious consideration. But this is not the case. We look in vain for any such charge. On the contrary the jury were distinctly told that towns were not insurers of the safety of travelers on the highway; that their only duty was to keep the highways in such reasonable state of repair that travelers exercising ordinary care may pass over them safely; that the mere fact that an accident had happened to a traveler on the highway was not of itself sufficient to show that the road was not in a suitable state of repair; and finally in substance, that it was the duty of the town to provide a railing or other barrier at the point in question only in case the jury found that the character of the ground bordering the highway was such that it made travel on the highway unsafe.

It is true they were also told, in substance, that travelers in the night-time need, and that it was the intention of the legislature to give them, the protection of a railing or fence or other barrier, of sufficient strength and of such construction as to prevent them, under ordinary circumstances, while exercising due care, from going off a bridge or embankment.

This part of the charge is in substance taken from the opinions of this court in the cases of *City of Norwich* v. *Breed*, 30 Conn., 544, and *Munson* v. *Town of Derby*, 37 Conn., 310, and in it we see nothing objectionable, taken in connection with the claims of the parties and the other parts of the charge as set out in the record.

We see nothing in any part of the charge to justify the claim that it imposed a duty upon the town other or greater than that which the law imposed. On the contrary the duty imposed by law on the town with reference to this highway, at the point in question, was fully and fairly stated.

The law clearly imposed the duty on the town to protect travelers on this highway, provided the road here was so made or raised above the adjoining ground as to be unsafe for travel. Whether or not the condition of this highway at the point in question made travel upon it unsafe, was one of the important questions in the case. Under our law that question, as well as that of the negligence of the town, was, upon the facts in the case, one of fact to be determined by the jury under proper instructions.

But the defendant complains that there is in the charge no reference at all to the row of trees as a protection to travel. Whether this is so or not does not appear, for the entire charge is not upon record. Assuming it to be true, however, the defendant does not show how he was harmed thereby. He requested no specific charge upon that point, nor does he assign the omission to charge upon it for error.

It is quite obvious also that this matter was prominently brought to the attention of the jury. The defendant claimed that the trees formed a sufficient barrier and the plaintiff that they did not. Whether they did or did not was one of

the important and prominent questions of fact in the case. The charge was made with reference to the evidence and the claims of the parties upon this point. We think the jury must have clearly understood that if the trees constituted a sufficient barrier, no other barrier was necessary.

On the whole the record does not disclose that any improper instructions were given upon this point, nor does it show that any proper instructions asked for or required by the defendant were refused.

We have thus considered all the errors assigned, and can thus far find in them nothing that entitles the defendant to a new trial.

Perhaps however, upon the last two main points in the defendant's brief, its real complaint is not that the charge abstractly considered was not correct, but rather that it was not precisely adapted to the facts claimed to have been proved. In their brief the counsel for the town say :—" It is not a case where the party injured was endeavoring to drive along in the line of the highway, and owing to some defect in the protection of the highway accidentally passed off or got out of its limits. But it is a case where the traveler undertook to back his wagon across the highway at right angles therewith in the night season, and thus met his injury." And it is claimed that, with reference to such a state of facts, the court erred in charging the jury that Lutton might presume that the town had performed its duty in protecting the highway at the point of danger; and also in charging them that the town was bound to protect the highway at that point as against one backing across the road, as Lutton was doing. We think these claims are untenable.

On the trial below neither party claimed that Lutton was not a traveler on this highway within the meaning of the statute; nor that he had no right to back across the highway for any necessary and legitimate purpose ; nor that in so doing he was using the highway in an illegal manner; nor that he had in fact no necessary or sufficient reason for backing across the road. Neither did they claim to have proved

that, in doing as he did, he intended to leave the traveled path, or that he voluntarily left it to encounter the dangers outside.

Upon the facts claimed we fail to see why Lutton at the time of the accident was not a traveler upon this highway, using it in a legitimate manner for a legitimate purpose, and on the trial below the court and the counsel on both sides seem to have so regarded him. The important question in the court below seems to have been, not whether Lutton was entitled to the same rights as one driving along the highway, but whether, in doing as he did, all things considered, he acted as a reasonably prudent man would under like circumstances.

If he was not essentially in the same position as a traveler passing along the traveled path, it was the duty of the defendant to make this appear of record, and to have requested the court below to charge with reference thereto. *Woodruff* v. *Noyes*, 15 Conn., 335. In that case it was said (page 341) :—" It is certainly not the duty of the court to anticipate in its charge every possible application of the proof offered by the parties, but only to state such principles of law as apply to the facts as distinctly claimed to be proved. If the defendants supposed that they had succeeded in showing a special authority, they should have requested a specific direction to the jury upon that point."

Assuming that Lutton in doing what he did acted as a reasonably prudent man would have done, then, so far as the record shows, we think he was entitled to the same protection and to act upon the same presumptions as if he had been passing along in the line of the traveled path. The mere fact that the accident happened while he was backing across, rather than while he was traveling along, the highway, made no difference in these respects.

If there were any other facts in evidence which made the case of Lutton to differ from that of one traveling along the highway, it was the duty of the defendant to call the attention of the court below to those facts and to request a

specific direction to the jury with reference to them. This it did not do.

We think the charge was adapted to the facts as claimed, and as they appear of record.

There is no error in the judgment appealed from.

In this opinion SEYMOUR, FENN and ROBINSON, Js., concurred.

CARPENTER, J., dissenting. Section 2672 of the General Statutes is as follows:—" The party bound to maintain any bridge or road shall erect and maintain a sufficient railing or fence on the side of such bridge, and of such parts of such road as are so made or raised above the adjoining ground as to be unsafe for travel; and whoever shall suffer damage in his person or property by reason of the want of any such railing or fence, may recover damages from such party."

" Unsafe for travel!" Where unsafe? and for whom? Manifestly for persons traveling on and along that part of the highway intended and prepared for their use; if on foot, on and along the side-walk, if there is one; if in carriages, on that part of the highway designed for carriages. The use of a side-walk by persons traveling in carriages, or of that part of a country road not worked for carriage use, would be neither legitimate nor proper. Persons attempting it have no claim to the protection of the statute. The statute was intended to protect only those who use the highway as it is ordinarily used. Hence, if in carriages they depart entirely from the carriage way, (unless allured therefrom through some fault of the town, as in *Munson* v. *Town of Derby*, 37 Conn., 298,) and drive upon the side-walk, or upon the unworked portion of a country road, the statute affords them no protection. If, in so doing, they meet with defects, obstructions and dangerous pitfalls, they assume the risk. No other construction of the statute is admissible.

In this case it is found that " the defendant offered evidence to prove, and claimed to have proved, that the plaintiff's decedent, Joseph Lutton, on the night in question, in

driving from Manchester to Vernon, began to deviate from the actual traveled path of the highway some two or three hundred feet south of where the accident took place, and that the wheel tracks of his carriage showed a zigzag course until he had driven to a point about sixty-two feet from said boarding house, and on the easterly side of said worked traveled path, and about thirty-two feet easterly of the northernmost of said trees, and that there he stopped his horse, and, although the road at that point was clear and well lighted, he backed his horse, cramping his wagon across the highway, some thirty-two feet to the row of trees, and then, between the last two trees, across the strip of land on which the row of trees were, across the side-walk about eight and a half feet, and thence the whole was precipitated down the bank into the mill-pond, where the driver and his companion, one Lawson, who was riding with him, were drowned," etc. In this connection the defendant's counsel asked the court to charge the jury that "if the jury shall find that on the night that the injury happened the plaintiff's decedent was traveling on the easterly side of the highway, until he came to a point more than thirty feet easterly from the row of trees which formed the western boundary of the highway, and then stopped his horse, and backed his horse and wagon across the road to the row of trees, and then between the trees and across the sidewalk, being about eleven feet more, and then down the bank into the pond, this fact of itself, unexplained, will justify the jury in finding that he was guilty of such contributory negligence as to defeat the right to recover in this case." The court declined to so instruct the jury.

For the purposes of this discussion it must be assumed that the facts thus claimed to have been proved, were proved. If they were, it is too plain for argument that the plaintiff's decedent was not in the legitimate and proper use of the highway. If not proved, it is equally clear that the defendant owed him no duty. He was entirely off the carriage track of the highway, and was using the unworked portion of the highway and side-walk for some unknown

purpose of his own. Surely he was not a traveler, and was not entitled to the protection of a traveler. It is true the court was not asked to rule or charge to that extent, but was simply asked to charge that his position was such that it was *primâ facie* evidence of contributory negligence. I think it was that, and more too. It was not merely an evidential fact tending to prove contributory negligence, but it was a fact which, unexplained, constituted a defense. But regarding it as an evidential fact, the request was proper and should have been complied with. There was one possible explanation which was consistent with the plaintiff's right to recover; and that was, that the deceased was in that position in consequence of some neglect of the town. In the absence of that, or of some equivalent explanation, I think it is very strong and sufficient evidence of negligence.

In refusing to give the instruction requested, the court gave the jury to understand that so important a fact required no explanation, certainly not by the plaintiff; and yet it clearly recognized the fact that an explanation was necessary; for, in another part of the charge, the court, in speaking of the fact that the deceased stopped his horse and backed him between the trees across the sidewalk and down the bank into the pond, says :—"But what was the occasion for stopping at this point neither of the unfortunate victims is here to explain to us, and there is no evidence probably that can ever be obtained to explain it." Thus the matter was so left that the jury might have inferred, and probably did, that it was incumbent on the defendant to make the explanation. In this I think the court was clearly wrong, and did injustice to the defendant.

Go back with me for a moment. I said at the beginning that Lutton, at the time of the accident, was not a traveler within the meaning of the statute, and consequently was not in a position to claim its protection. I want to elaborate this idea. Suppose, instead of backing his horse from the traveled portion of the highway, he had intentionally driven his horse upon and along the side-walk, and, by some mishap, when he came to the place where the accident hap-

pened, he had been precipitated down the embankment and was drowned; will it be seriously contended that the town would have been liable? Does the supposed case differ from the actual one in principle? Does the manner of his coming to the place make any difference? Is it material that he came to it intentionally, instead of accidentally, so long as no negligence of the town caused him to be there? There can be but one answer to these questions. How then, and upon what principle, does liability attach in this case? It may be suggested, as the judge intimated in one part of his charge, that while traveling along the highway he stopped, and, in attempting to turn around, backed too far between the trees, etc.; or that he became confused or bewildered by reason of sudden illness. But that was not the fault or neglect of the town; it was rather the misfortune of Lutton, and no liability attached to the town. Suppose again that he had left the traveled track and driven against the trees; or in some other place had left the track and had driven upon the unworked portion of the highway, over rocks and rough places and through ditches, and so had met with an accident; will any one pretend that the town would be liable in such a case? Is the town bound to keep the entire width of the laid-out highway passable and in a safe condition? The analogy between this supposed case and the actual one is well nigh perfect. I do not see how it is possible to distinguish them in principle. If such is to be the established law of this state an intolerable and unnecessary burden is imposed upon our towns. But the law is not so.

The law as given to the jury was not adapted to the facts and circumstances, as claimed, of this case. The judge in his charge assumed that Lutton, while backing his horse over the space and across the side-walk between the carriage track and the embankment, was to be regarded as upon the same footing with ordinary travelers. While charging upon the subject of contributory negligence Lutton is repeatedly spoken of as a traveler; and not once is it suggested that when he left the traveled track and backed his horse across

the side-walk he ceased to be a traveler; nor was there any claim that he was induced to leave the traveled path by any neglect of the town. As the court had refused to charge the jury as requested by the defendant, that leaving the path and crossing over to the pond and down the slope, unexplained, would justify the jury in finding contributory negligence, the jury must have understood that it was enough if he used due care in backing his horse, and that the propriety or impropriety of his using that portion of the highway in the manner he did was of no importance. The negligence of Lutton consisted in doing the thing itself, and not in the manner of doing it.

Again. In charging the jury as to the duty of the town and negligence on its part, the court assumed that Lutton, at the time of the accident, was using the highway as a traveler. Thus the court said:—"It is the duty of a town to keep its highways in a reasonably safe condition by night as well as by day ; and a traveler proceeding along a traveled road in the night has a right to presume that the ordinarily *traveled path or beaten track* is free from dangerous obstructions or pitfalls, and that sufficient railings, if necessary, or barriers, have been erected on the sides of bridges and on such parts of the way as are so raised from any cause above the adjoining ground as to be *unsafe for travelers using such traveled path or beaten track.*"

This part of the charge is meaningless and has no application to the case except upon the theory that Lutton, at the time he was backing across the side-walk, was traveling upon "such traveled path or beaten track." Obviously he was not doing so. Therefore the charge was not adapted to the facts as claimed, and was misleading. The rest of the charge was consistent with the part quoted. If Lutton at the time of the accident was not in the ordinary path, but was off from it through no fault of the town, and on a portion of it not worked or designed for the use of carriages, as was virtually conceded, he was not a traveler, and the supposed duty of the town to erect a railing for his protection did not exist; consequently, as to him, the town could not

have been guilty of negligence. The error consisted in assuming that he was a traveler and was entitled to protection, and that error was material as to negligence by the town and due care by Lutton. As to the latter, whatever may be said of the former, the record fairly presents the question.

I think there should be a new trial.