# F. THILL'S SONS & COMPANY vs. THE PERKINS ELECTRIC LAMP COMPANY.

Hartford Dist., Oct. T., 1893.  ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

In an action to recover for glass bulbs, where the defendant, by way of counterclaim, alleged that many of the bulbs contained a latent defect not discoverable until after they had been made into incandescent electric lamps and sold, in consequence of which the business and reputation of the defendant had suffered greatly, it was held, that the plaintiff might show on cross-examination of defendant's general manager that about the time in question a suit had been begun to restrain the defendant from the manufacture and sale of its lamps upon the ground of an infringement of a patent, as such evidence tended to disprove the cause assigned by the defendant for its loss of business and reputation.

The defendant employed an expert glass blower to examine and experiment to ascertain the cause of the difficulty it experienced in making its lamps of the aforesaid bulbs, and appointed one P., who was almost daily at its factory and was skilled in the electrical features of lamp manufacture, as its agent and representative, with directions to assist said expert in his investigations; during such investigations said P., in response to questions of said expert, stated that the defendant had experienced the same difficulty before with said bulbs, and did not then know the cause of it, but had simply worked into and out of the trouble. Held, that such statements were within the scope of P.'s agency, and that said expert, as a witness for the plaintiff, might testify to them as admissions of the defendant. Held also, that said expert might state that on testing lamps made under his directions and of said bulbs, the said P. declared they were good lamps and burned well.

Held, also, that the plaintiffs, having offered testimony that all the glass bulbs made by them had for years been made of the same materials, mixed in the same way and sold from the same pot indiscriminately to many different customers, might then show, as tending to rebut the claim of the defendant, that the glass bulbs furnished other incandescent electric lamp manufacturers during the time in question were good bulbs, and free from latent defects.

The trial court has discretionary power to exclude a deposition where the deponent on cross-examination declines to answer a material question and the objection is seasonably made; but under the circumstances of this case it was held that the admission of the deposition was fully justified.

[Argued October 11th—decided December 13th, 1893.]

ACTION to recover the balance of an account for glass bulbs furnished by the defendant for its use in the manufacture of incandescent electric lamps ; brought to the Superior Court in Hartford County, and tried to the court, *Prentice, J. ;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant.

Upon the trial the defendant claimed, and offered evidence to prove, that by far the larger part of all the bulbs furnished by the plaintiffs to the defendant after May, 1890, had a latent defect, which caused the lamps made therefrom to be worthless. The bulbs furnished prior to May 1st, 1890, were admitted to have been of good quality.

The plaintiffs, on the other hand, claimed and offered testimony to show that the glass bulbs furnished by them during the entire year of 1890 to the Shaeffer Electric Company, the Germania Electric Company, and other companies, were made of the same materials, mixed in the same way, and taken indiscriminately from the same pot as those furnished to the defendant, and that no change of any kind had been made by the plaintiffs in their materials or method of manufacture for years. And for the purpose of showing or tending to show that the bulbs furnished the defendant during the year 1890 were not in fact defective, the plaintiffs offered the deposition of Charles W. Wolcott of Dedham, Mass. Said Wolcott testified that he was in the employ of the Shaeffer Electric Company from February 3d, 1890, until the Germania Company bought out the former company in October, 1890, and afterwards in the employ of the Germania Company ; that he had charge of the books and acted as superintendent of the factory in the absence of the regular superintendent ; that each of said companies were engaged in the manufacture of incandescent electric lamps, and during the year of 1890 bought many glass bulbs from the plaintiffs for use in such manufacture ; that said bulbs were without defects, and that the lamps made therefrom were satisfactory ; and that no difference had been observed in the quality of the bulbs or in the lamps made therefrom since May 1st, 1890.

The defendant objected to each and every question put the witness as immaterial and irrelevant.

The other facts are sufficiently stated in the opinion.

*Edward D. Robbins,* for the appellant (defendant).

I. The admission in evidence of Slavin's testimony as to Perkins' statements should not be sustained unless it clearly appears that this evidence comes fully and fairly within the reasons of some exception to the rule against hearsay.

The court also permitted Slavin to testify what Perkins gave as his opinion about the cause in the past of the troubles the company had had in the manufacture of its lamps.

If plaintiffs desired to prove what these experiments showed or what Perkins' opinion was as to the cause of the trouble in the manufacture of lamps, they should have produced the best evidence by calling Perkins himself. Hearsay is not evidence. *Brown* v. *Crandall,* 11 Conn., 94; *Dailey* v. *The N. Y., N. H. & H. R. R. Co.,* 32 Conn., 358.

" The opinion of an agent based on past occurrences is never to be received as an admission of his principal ; and this is doubly true when the agent is not a party to those occurrences." *Ins. Co.* v. *Mahone,* 21 Wall., 157.

A case precisely like the present seems never to have arisen, but the principles governing it are clear enough.

II. It was error not to have excluded the deposition of Wolcott.

The refusal of the witness to examine the books and state the total amount of sales of lamps during the year 1890, entitled the defendant to have the entire deposition excluded ; notice of this objection to the deposition having been given when the deposition was taken. *Smith* v. *Griffith,* 3 Hill, 333, 338 ; *Robinson* v. *Boston & Worcester R. R. Co.,* 7 Allen, 393 ; *Kimball* v. *Davis,* 19 Wendell, 437 ; *Chase* v. *Keniston,* 76 Me., 209 ; *Nicholson* v. *Desabry,* 14 La. Ann., 81 ; *Palmer* v. *Insurance Co.,* 47 N. Y. Superior Ct., 455 ; *Valton* v. *National Fund Life Assurance Co.,* 20 N. Y., 32.

III. It was error to permit evidence to be introduced about the application for an injunction against defendant by Edison.

There was no attempt to prove that the existence of the Edison suit was known to defendant's customers. The suggestion that the Edison suit was the cause of this claim of defendant was pressed by plaintiffs; but the evidence was not admissible for any such purpose as the drawing of so illogical an inference.

*Charles H. Briscoe* and *James P. Andrews*, for the appellees (plaintiffs).

1. The inquiry about the patent litigation was so manifestly proper that argument in support of the ruling of the court is entirely unnecessary.

2. Slavin's testimony was also properly received. The evidence was in the nature of an admission that the difficulty the defendant was experiencing was not of a continuous, but rather of an intermittent character or nature.

3. As to Wolcott's deposition: This evidence clearly had a tendency to disprove the claim of the defendants that the trouble lay in the character of the glass, since the plaintiffs supplemented this testimony by proof that the glass had been made in a uniform way for years, and that much of the glass used by these other manufacturers had been taken from the identical pot as that which had been sold to the defendant company. The evidence was not only material but was very convincing, and justly so. *Calkins* v. *City of Hartford*, 33 Conn., 58.

4. The court below committed no error in overruling the defendants' objection to the introduction in evidence of the deposition of Wolcott.

In the first place, it does not appear that the books, the production of which the defendants sought, were in the custody of the witness Wolcott, or that he had the power to produce them.

Secondly, the evidence was entirely irrelevant and improper.

But, aside from this, the plaintiffs could not be prejudiced by the witness's refusal to answer a question upon cross-examination propounded by the defendants.

· The proper course would have been for the defendant to have asked the magistrate to commit Wolcott, if in fact there was anything wrong or illegal in his action.

ANDREWS, C. J.   This suit was brought to recover the price of certain lots of glass bulbs sold and delivered by the plaintiffs to the defendant.   Judgment was rendered for the plaintiffs.   The defendant appealed to this court, and has assigned several reasons of appeal all of which are based on rulings of the Superior Court in respect to the admission of testimony.

The case shows that the plaintiffs are manufacturers of glass, and that among other things they manufacture glass bulbs, such as are used in making incandescent electric lamps. The defendant is the manufacturer of such lamps, and had for some time purchased of the plaintiffs the glass bulbs used in its business.   It was admitted by the defendant that it had purchased of the plaintiffs the bulbs mentioned in the bill of particulars.   All of them purchased prior to May 1st, 1890, were admitted to have been of a good quality.   But the defendant claimed that by far the larger part of those furnished after that date had a latent defect which caused the lamps made therefrom to be worthless, and claimed that by reason of such defect its business had fallen off and its reputation as a manufacturer of such lamps had been greatly injured.   The plaintiffs denied that there was any defect in the bulbs.   And they claimed that if the defendant's business had fallen off at all it was due to other causes, in part to litigation commenced by Edison against the defendant to restrain it from infringing his patent for incandescent lamps.

The defendant called as a witness J. J. Gates, its general manager, who testified at length as to its loss of business. On cross-examination he stated that no injunction had been issued restraining it from the manufacture and sale of incandescent lamps.   He was then asked if a suit had not been brought against the defendant and an injunction applied for between July and November, 1890.   The defendant objected to this question on the ground that it was immaterial.

The court allowed the question, and the witness answered " Yes, sir." There was no error in this ruling. It was not so much the form of the litigation as the fact that there was litigation in which the defendant might be enjoined that was important. Any litigation brought by Edison against the defendant alleging that it was infringing his patent would tend to prove the very thing which the plaintiffs claimed.

The lamp which the defendant makes was named after one Charles G. Perkins. He was not an officer or a regular employee of the defendant, but he furnished it with all the carbons it used, the same being made by him after a secret process which he discovered, partly in a secret room set apart for him for that purpose in the defendant's factory and partly in two establishments in Hartford. He was at the factory almost daily during the year 1890, and after the discovery, in July of that year, of the existence of some trouble with the lamps which seriously impaired their efficiency and life, he conducted many of the experiments made by the defend-ant for the purpose of determining its cause. The defendant also invited one P. S. Slavin, of Brooklyn, N. Y., an expert glass blower, to come to its factory in Manchester to make investigations and experiments as to the cause of the trouble it was having in making its lamps. He came on or about November 24th, 1890. He remained there two days conduct-ing such investigations and experiments. He was accom-panied and assisted in them by Mr. Perkins, who remained with him and assisted him during his stay. Perkins gave Slavin such information regarding the experience of the com-pany in its troubles with its lamps as the latter required, made suggestions as to the experiments to be tried, and in-structed and directed the employees in the factory in such work as the experiments required. For these purposes Per-kins was the agent and representative of the company, under authority from its general manager. Slavin was not himself an electrical expert, nor familiar with the manufacture and operation of electric lamps. In these matters he relied upon the knowledge and information of Perkins, who was informed

upon them.   The company knew that Slavin was specially skilled only in the manufacture and manipulation of glass, and that he would be obliged to rely upon some one in all matters pertaining to electricity and the electric features of lamp construction, and Perkins was authorized to act for it in those matters.   The company knew that Slavin was relying on Perkins as aforesaid.   During their investigations and experiments Slavin inquired of Perkins, for the purpose of ascertaining or assisting him to ascertain the cause of the difficulty; whether they had had this trouble before, to which Perkins replied, "Yes." Slavin then inquired: "How did you get out of it?" And Perkins replied: "We worked out of it and into it again." Slavin then asked: "What was the cause of it then?" And Perkins replied: "Well, I don't know.   We kind of worked out of it." To all of this evidence of the statements of Perkins the defendant objected as being hearsay.   The court admitted the evidence.

During the investigations a number of the lamps were made up according to suggestions of Slavin and tested by Perkins in Slavin's presence. Slavin testified that during these tests Perkins stated that these lamps or some of them burned well and were good lamps. The defendant objected to this statement of Perkins as being hearsay, but the court admitted it.

It seems to us that all these questions and answers were fairly within the purpose for which Mr. Perkins was the agent of the defendant, and that there was no error in admitting them.

The plaintiffs claimed that they made a very large number of these glass bulbs precisely alike in their manufacture, made of the same ingredients, mixed in the same way, and out of the same pot sold indiscriminately to the defendant and to other of their customers who were engaged in the manufacture of incandescent lamps (namely, to the Shaeffer Electric Co. and the Germania Company), during the period when the defendant claimed that the bulbs were defective, and that the bulbs sold to these other customers were found to be good ones and not defective. Upon this part of their

Thill's Sons & Co. *v.* Perkins Electric Lamp Co.

case the plaintiffs offered the deposition of Charles W. Wol-
cott, taken in Boston. On cross-examination this deponent
was asked certain questions, as follows:—*Qu.* "What was
the total product of the lamps of each of the two companies
you have mentioned during 1890?" *Ans.* "I cannot say."
*Qu.* "Will not the books of these companies show this?"
*Ans.* "Yes." *Qu.* "Are they here?" *Ans.* "No, at the
factory;—that is to say, the books of the Shaeffer Company
are not in our possession; the statistics of the Germania
Company are in the books of the factory." *Qu.* "Will the
books which are there show the amounts of sales of lamps
during any part of the period about which you have testi-
fied?" *Ans.* "Yes, for the entire period." *Qu.* "Please
refer to these books, if necessary, and state the total amount
of sales of lamps of these electric companies during the
period about which you have testified." *Ans.* "I should
decline to do so." At the taking of the deposition the de-
fendant's counsel objected to the introduction of this depo-
sition because of the refusal of the witness to answer the
question. On the trial counsel insisted on his objection to
the receipt of the deposition in evidence for the same reason,
and asked the court to exclude it. The court declined to
do so, and admitted the deposition.

It is doubtless within the power of the Superior Court to
refuse to admit a deposition to be read in evidence when
the deponent has refused to answer a question; but we can-
not say that it is an error not to do so. It is a matter lying
largely, if not wholly, in the discretion of the court. We
do not understand that there is any rule which, as matter
of law, requires that a deposition shall be rejected whenever
the deponent declines to answer a question, even though
the question may be a proper one. Sometimes the question
might be of so little consequence that whether it was an-
swered or not could make no difference; or it might be that
the deponent was justified in declining to answer by extra-
neous reasons. A party should not be sacrificed to his wit-
ness. In the case now in hand the reason given by the
witness for not answering might have been a sufficient one.

It appears from the previous questions that the books which the deponent was asked to examine were not in court. An examination of them could not have been made without delay and, perhaps, an adjournment of the taking of the deposition. And it does appear that the counsel did not ask for any rule requiring the witness to answer. There was enough to warrant the court in refusing to exclude the deposition.

Certain questions and answers in Wolcott's deposition, on his direct examination, were objected to. They seem to have been properly admitted. The testimony tended to show that the bulbs sold to the defendant were not defective.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.