EUGENE L. FACEY, ADMINISTRATOR (ESTATE OF JOHN W. FACEY) *v.* FRANCIS J. MERKLE ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued January 6—decided January 27, 1959

*Snow G. Munford,* for the appellants (defendants).

*Joseph P. Kenny,* for the appellee (plaintiff).

KING, J. The defendants' basic assignment of error is that their motion to set aside the verdict for the plaintiff on the ground that it was against the evidence on the issue of liability should have been

granted. This claim must be determined on the narrative of evidence. *Nicholson Realty, Inc.* v. *Libby,* 144 Conn. 555, 557, 135 A.2d 738; Practice Book § 448. The defendants also assign errors in certain rulings on evidence. These must be determined on the finding. Id. § 405; Maltbie, Conn. App. Proc., §§ 126, 147.

The facts material to the appeal which the evidence warranted the jury in finding will be summarized. The defendant Elsie N. Merkle saw the decedent rolling down the last few steps of a stairway in a rest home operated by her and her husband, the defendant Francis J. Merkle. Death resulted from the fall. The decedent was seventy-nine years old, had been discharged from a hospital after a cataract operation on each eye, had thereafter spent about six weeks in a private convalescent hospital, and had been removed therefrom by the plaintiff, who was his son and conservator, to the defendants' rest home. At the time of the admission of the decedent, he was wearing new glasses and used a cane in walking. He was assigned a room on the second floor opening onto a landing at the top of the stairs and, while arranging for his admission, the plaintiff and his wife called Mrs. Merkle's attention to the danger that the decedent would come out of his room and fall down the stairs. Mrs. Merkle assured them that a gate would be installed at the head of the stairs and that the defendants would supervise the decedent, at least most of the time, in going up and down the stairs. The decedent was at times incontinent and on the day of the fall had, while downstairs, soiled his slippers. Mrs. Merkle started to clean them and the decedent went upstairs in his stocking feet to get his shoes. He put them on and the fall took place.

In describing the occurrence, the complaint alleged that "the decedent . . . was in the act of leaving his room to descend said stairway, when by reason of the . . . defective condition . . . [of the] staircase . . . [he] was caused to fall down said stairway to the bottom." These allegations precluded recovery on any theory that the decedent fell at any place other than at or near the top of the staircase. *Reciprocal Exchange* v. *Altherm, Inc.*, 142 Conn. 545, 552, 115 A.2d 460; *Antonofsky* v. *Goldberg*, 144 Conn. 594, 599, 136 A.2d 338. The complaint is far from a model. In specifying alleged defective conditions of the staircase, it did not limit itself to those at the head, and its allegations were mutually inconsistent. As hereinafter pointed out, however, the only evidence was that the plaintiff fell at or near the top of the stairs, and the jury could not legally have considered any claimed defective condition elsewhere. The only specification of a defective condition at or near the top of the staircase was that "the location of the exit from the decedent's room, being directly adjacent to the top step, did expose a person leaving said room to imminent risk of life or limb." Since no error was claimed in the charge, it is not printed in the record and is presumed to have been correct. *Brower* v. *Perkins,* 135 Conn. 675, 683, 68 A.2d 146; see Maltbie, Conn. App. Proc., § 189, p. 232. We therefore must assume that there was only the one claimed defective condition submitted to the jury. There was evidence that the top of the staircase was defective because of the proximity to it of the doorway of the decedent's room, since (a) the door was hinged on the side away from, instead of the side toward, the staircase, and (b) a part of the doorway slightly overhung the staircase. The decedent was admitted on March 16, 1957, and

his fall took place on March 20. He was a business visitor at the defendants' establishment. *Hennessey* v. *Hennessey,* 145 Conn. 211, 212, 140 A.2d 473. The measure of duty owed him by the defendants with respect to the condition of the premises was the exercise of reasonable care to have and keep them reasonably safe for the reasonably to be anticipated uses which he would make of them. *Lubenow* v. *Cook,* 137 Conn. 611, 614, 79 A.2d 826. The defendants knew of the decedent's general condition, of the cataract operation and of the new glasses. The stairway was not only an area of the premises where he had a right to be but was also an area where Mrs. Merkle knew that he was then likely to be, since he had gone up to his room unattended, in his stocking feet, to get shoes to replace the slippers which she had taken to be cleaned. *Knapp* v. *Connecticut Theatrical Corporation,* 122 Conn. 413, 416, 190 A. 291.

It is the defendants' claim that since no one saw the decedent fall, there is no evidence as to where he fell or as to the cause of his fall and that this necessarily required that any verdict in the plaintiff's favor be set aside. At this point it is appropriate to consider a claim of error in a ruling on evidence. Some few days after the fall, the plaintiff's wife visited the decedent in the hospital. He was then unable to speak to any extent, but could move his head. She testified that she asked him whether he fell at the bend in the stairs. This bend began two steps below the upper landing which also was the entrance to his room. Over the defendants' objection and exception, she was allowed to answer that the decedent moved his head from side to side and to indicate the motion with her own head. She then testified that she asked the decedent if he fell at the top of the stairs. Over the defendants' objection

and exception, she was allowed to answer that he moved his head up and down and to indicate the motion with her own head. It is the defendants' claim that while our statute (Rev. 1958, § 52-172)[1] makes admissible statements of the decedent, it does not render admissible monosyllabic responses, whether by speech or sign, to questions propounded by another. The statute is broad enough to include ordinary modes of communication, including a motion of the head. The leading nature of the questions propounded to the decedent, and any consequent uncertainty as to the accuracy of his comprehension of them, affected the weight to be given the testimony. They did not render it incompetent. By cross-examination of the witness, the defendants could bring out these infirmities, such as they were. We cannot say on this record that the court erred in admitting this evidence. See *Holcomb* v. *Holcomb*, 28 Conn. 177, 179; *Taborsky* v. *State*, 142 Conn. 619, 629, 116 A.2d 433.

The same witness was asked as to the meaning of the head motions of the decedent which she had described and, over objection and exception, was allowed to answer that the decedent, by the shake of the head, indicated "No," and by the up and down motion indicated "Yes." This evidence, in the sound discretion of the trial court and subject to test by cross-examination, was admissible under the rule as to lay opinion evidence as explained in cases such as *Sydleman* v. *Beckwith*, 43 Conn. 9, 11; *MacLaren* v. *Bishop*, 113 Conn. 312, 313, 155 A. 210; *State* v. *Jones*, 124 Conn. 664, 667, 2 A.2d 374; and *Arm-*

[1] "Sec. 52-172. DECLARATIONS AND MEMORANDA OF DECEASED PERSONS. In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ."

*strong* v. *Dolge,* 130 Conn. 516, 519, 36 A.2d 24. From all of this evidence, the jury were warranted in finding that the decedent fell at or near the top of the stairs. Indeed, this was really the only evidence as to where he fell.

The evidence as to the proximate cause of the decedent's fall was purely circumstantial. *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473. This was not, however, necessarily fatal to the plaintiff's case. Ibid.; *LeBlanc* v. *Grillo,* 129 Conn. 378, 381, 28 A.2d 127. The stairway was in excellent repair and was well lighted. Although the evidence was weak, it cannot be said that as matter of law it was inadequate to support the finding of the jury, as indicated by the verdict, that under all the circumstances it was more probable than not that the decedent's fall at the head of the stairs was proximately caused by the proximity of the doorway to the stairway, as alleged. No other defects in this area were alleged in the complaint; the defendants, of course, offered no evidence of other defects in this area, nor did they claim any. While no two cases are factually identical, the situation here was somewhat like that in *White* v. *Herbst,* 128 Conn. 659, 661, 25 A.2d 68, and *Dickson* v. *Yale University,* 141 Conn. 250, 254, 105 A.2d 463. Here the only defect involved was structural, and consequently there was no issue of constructive notice. There was no error in the court's refusal to set aside the verdict as against the evidence.

In another assignment of error, the defendants objected and excepted to the exclusion of evidence offered by them, through a witness in charge of the premises during the years a church owned them, before they were sold to the defendants. The room later occupied by the decedent had then been used

for meetings by a group of adults of above middle age. The evidence was that the witness had never known or heard of anyone's falling or being injured on these stairs. A place or instrumentality is defective if it is not reasonably safe for a reasonably to be anticipated use. A defective condition may exist as a material element even in an action sounding in contract. *F. Thill's Sons & Co.* v. *Perkins Electric Lamp Co.*, 63 Conn. 478, 484, 29 A. 13. Where a place or instrumentality is claimed to be defective, evidence of its effect at other times, after preliminary proof that all material conditions were substantially identical, may be admitted on the issue whether it was defective at the time in question. Note, 31 A.L.R.2d 190. But in laying the foundation that the material conditions were substantially identical, two aspects are involved. One is that the instrumentality itself must have been substantially in the same condition. The other is that the use made of it must have been substantially identical in all material respects with the use which was actually involved in the case and was reasonably to be anticipated. In the instant case, since the claimed defective condition was structural as distinguished from one of a transitory nature such as a foreign substance on a stair tread, the defendants were able to, and did, offer evidence that it was substantially the same during the period involved in the proposed inquiry. *Godfrey* v. *Connecticut Co.*, 98 Conn. 63, 69, 118 A. 446; *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 226, 10 A.2d 600. But the second element required evidence that the use on the part of the church group was substantially identical with the reasonably to be anticipated use of this decedent. *Lutton* v. *Vernon*, 62 Conn. 1, 8, 23 A. 1020; *Petrillo* v. *Kolbay*, 116 Conn. 389, 395, 165 A. 346. There

was evidence that the defendants, whether their place of business was a convalescent home, as the plaintiff claimed, or a rest home, as they claimed, held themselves out as accepting persons who, owing to age or other reasons, were not, even though ambulatory, in good physical condition. There was also evidence that the defendants admitted the decedent and assigned him his room with knowledge of his general physical condition, as hereinbefore mentioned. There was no evidence that this was the general physical condition of the members of the church group so as to make their use substantially identical with that of the decedent. It certainly was well within the court's discretion to exclude the evidence of use by the members of the church group as having little or no bearing on the question whether the stairway was reasonably safe for the reasonably to be anticipated use by persons such as this decedent. *Lutton* v. *Vernon,* supra; *Petrillo* v. *Kolbay,* supra. There was no error in the ruling excluding this evidence.

The other assignments of error attack evidential rulings which were within the discretion of the court and were not of such a character that discussion of them is needed.

There is no error.

In this opinion the other judges concurred.