CAROLYN ORMSBY *v.* EMIL FRANKEL,
COMMISSIONER OF TRANSPORTATION
(AC 17621)

O'Connell, C. J., and Schaller and Sullivan, Js.

Argued March 24—officially released July 6, 1999

*Louis B. Blumenfeld,* with whom, on the brief, was *William J. Scully,* for the appellant (defendant).

*Kathryn Calibey,* with whom was *Douglas W. Hammond,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Emil Frankel, commissioner of transportation, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Carolyn Ormsby, on her complaint brought pursuant to General Statutes § 13a-144,[1] the defective roads and highway statute. The defendant claims that the trial court improperly (1) admitted evidence pertaining to actual and constructive notice, (2) denied his motions to set aside the verdict and for a directed ver-

---

[1] General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. . . . The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

dict where there was insufficient evidence to support a finding of actual notice and constructive notice and (3) instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Saturday, February 20, 1993, between 2 and 3 p.m., the plaintiff was driving westbound on Route 6 in Farmington over Rattlesnake Mountain. Route 6 is a state highway, and, as such, the department of transportation (department) is responsible for its maintenance. The plaintiff was driving at approximately forty-five miles per hour in a forty-five mile per hour zone. In the course of her descent down Rattlesnake Mountain, she approached a lefthand curve. A department warning sign on the side of the highway, placed prior to the curve, informed drivers of the curve. Additionally, there was an advisory speed placard indicating that the recommended speed in the curve was forty miles per hour.

On February 20, 1993, the temperature was below freezing and the road was dry. The plaintiff entered the curve and encountered a large ice patch approximately 250 feet long in the westbound lane that had not been sanded or salted by the department. The plaintiff had no warning that the ice patch was on the curve and could not see it prior to encountering it. After the plaintiff crossed the ice patch, she lost control of her car and tapped her brakes two or three times to attempt to regain control of her vehicle. Her efforts were unsuccessful and she attempted to steer to regain control. Her car fishtailed approximately 180 degrees and ended up in the eastbound lane where her car collided with another vehicle driving eastbound up the hill. The plaintiff suffered serious injuries as a result of the collision.

An eyewitness to the accident, Jennifer White, was traveling westbound behind the plaintiff's car at a distance of approximately one to two car lengths. She

was also traveling at approximately forty-five miles per hour. As she entered the curve and crossed the ice patch, she also began to lose control, but eventually managed to regain it.

The first police officer on the scene, Charles Pritchard, approached the accident from the east. He approached the curve at approximately five to ten miles per hour, a much slower speed than the plaintiff or White, because he did not know the exact location of the accident. He also was unaware of the ice patch until he encountered it and his police cruiser slid on the ice. Additional facts will be set forth where necessary to the resolution of this appeal.

I

The defendant first claims that the trial court improperly admitted evidence regarding actual and constructive notice. Specifically, the defendant claims that the trial court improperly admitted evidence concerning (1) ice on Route 6 at times prior to the accident, (2) a prior accident at the same location and (3) hearsay testimony. We are not persuaded by the first two claims but agree with the third.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and *every reasonable presumption* is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Emphasis added; internal quotation marks omitted.) *Pacific Land Exchange* v. *Hunts*, 52 Conn. App. 362, 363–64, 727 A.2d 1281 (1999).

A

The defendant first claims that the trial court improperly admitted evidence of prior ice patches at the same location. We disagree.

The plaintiff presented evidence from various Farmington police officers and dispatchers that the area where the accident occurred was notorious for icing in the winter. The defendant claims that the testimony, which was admitted over objection, is "irrelevant to the question of whether the defendant had notice of the ice/water condition that existed at the time of the accident."

Evidence is admissible only if it is relevant. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable." (Internal quotation marks omitted.) *First Federal Bank, FSB* v. *Gallup*, 51 Conn. App. 39, 41, 719 A.2d 923 (1998). Although relevant, evidence will not be admitted if its probative value is outweighed by its prejudicial effect. See *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992). "It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *First Federal Bank FSB* v. *Gallup*, supra, 41–42.

In highway defect cases, the notice required "is notice of the defect itself which occasioned the injury, and not merely of conditions naturally productive of that defect and subsequently in fact producing it. 'Notice of another defect, or of the existence of a cause likely to produce the defect, *is not sufficient.*' *Smyth* v. *Bangor*, 72 Me. 249, 252 [1881]; *Pendelton* v. *Northport*, 80 Me. 598, 600, 16 A. 253 [1888]; *Ryerson* v. *Abington*, 102

Mass. 526, 532 [1869]." (Emphasis added.) *Carl* v. *New Haven*, 93 Conn. 622, 628, 107 A. 502 (1919).

The defendant relies on *Carl* for the proposition that evidence of prior alleged defective conditions is irrelevant. That reliance is misplaced. *Carl* makes clear that the question of prior conditions goes to the issue of sufficiency rather than relevancy. Both our Supreme Court and this court have dealt with cases where evidence of prior conditions was admitted. In those cases, neither court declared the evidence inadmissible, but dealt with the sufficiency of the evidence to prove constructive notice. See *Prato* v. *New Haven*, 246 Conn. 638, 640, 717 A.2d 1216 (1998) (evidence of prior bonfires at intersection every July 3, for fifteen consecutive prior years before court "not sufficient notice"); *Aaronson* v. *New Haven*, 94 Conn. 690, 692, 110 A. 872 (1920) (prior toppling over of silent policeman entered in evidence); *Pajor* v. *Wallingford*, 47 Conn. App. 365, 372 n.3, 704 A.2d 247 (1997), cert. denied, 244 Conn. 917, 714 A.2d 7 (1998) ("[s]uch evidence would often be relevant to prove the existence of the defect relied upon, its nature and the time when it should have been observed by the municipality").

The plaintiff's evidence that icing existed on prior occasions at the location of her accident is relevant to whether the department had constructive notice of the icing at the time of the accident. Moreover, we conclude that the admission of the evidence of prior icing conditions was not so prejudicial to the defendant as to outweigh its probative value. Whether it sufficiently proved that the department had constructive notice is a question of fact that the trial court properly left to the jury.[2] The trial court did not abuse its discretion as evidentiary gatekeeper.

---

[2] We discuss the issue of whether the evidence presented was sufficient to prove constructive notice in part II of this opinion.

B

The defendant next claims that the trial court improperly admitted evidence of a prior accident at the same location. We disagree.

"A party attempting to offer evidence of prior accidents or evidence of the experience of others has the burden of proving that the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff. . . . Moreover, [e]vidence of prior occurrences will be admitted only if the proffering party first lays a sufficient foundation of substantial similarity of conditions between the immediate and the prior happenings. . . . The question whether the essential preliminaries have been established is for the court, and the court's decision will not be disturbed unless there is clear and manifest error." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 452, 569 A.2d 10 (1990); see also *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 630, 717 A.2d 1205 (1998); *Sacks* v. *Connecticut Co.*, 109 Conn. 221, 238–39, 146 A.2d 494 (1929) (prior accident evidence admissible to show defendant knew or should have known of hazard created by particular condition or danger); *Martins* v. *Connecticut Light & Power Co.*, 35 Conn. App. 212, 216, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994).

The plaintiff offered the following facts, outside the presence of the jury, to establish the similarities between the prior accident and the plaintiff's accident. One day prior to the plaintiff's accident, on February 19, 1993, between 2 and 3 p.m., Matthew Eagan was driving westbound on Route 6 over Rattlesnake Mountain. He was driving approximately forty to forty-five miles per hour, and the roads were dry. As he entered

the same curve where the plaintiff's accident occurred on February 20, 1993, he encountered an unsanded patch of ice approximately twenty-five to thirty feet long. When he encountered the ice patch he lost control of his car and, as a result, crashed into the guardrail on the westbound side of the road, spun around and stopped in the eastbound lane. As Corporal Paul Lemieux of the Farmington police department arrived to investigate Eagan's accident, a department truck was sanding the ice patch. Lemieux further testified that the ice patches on February 19 and February 20, 1993, were in the same location. When questioned by the trial court, Lemieux testified that the ice patch was the same condition and in substantially the same location as the ice patch involved in the plaintiff's accident.

"In *Facey* v. *Merkle*, [146 Conn. 129, 148 A.2d 261 (1959), our Supreme Court] stated that 'in laying the foundation that the material conditions were substantially identical, two aspects are involved. One is that the [place] itself must have been *substantially in the same condition*. The other is that the use made of it must have been *substantially identical* in all material respects with the use which was actually involved in the case and was reasonably to be anticipated.' Id., 136." (Emphasis added.) *Hall* v. *Burns*, supra, 213 Conn. 453.

The plaintiff's accident occurred at approximately the same time of day, under the same road conditions and at the same location as the prior accident. In addition, both vehicles were traveling at approximately the same rate of speed when the patch of ice caused them to crash. We conclude that, following the authority of *Hall* and *Facey*, the trial court properly determined that the two accidents were substantially similar and, accordingly, properly admitted the prior accident testimony to prove that the department had constructive notice of the alleged defect. It is within the trial court's sound discretion to admit evidence of prior accidents.

"Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . ." (Internal quotation marks omitted.) *Hall* v. *Burns*, supra, 213 Conn. 455. Given the overwhelming similarities between the two accidents, we conclude that it was not "manifest error" for the trial court to have admitted the prior accident evidence.

## C

The defendant next claims that the trial court improperly admitted hearsay testimony elicited from Christina Russell to prove actual notice. We agree.

The following facts are necessary to a disposition of this claim. Russell lives on Rattlesnake Mountain near the accident scene. On February 20, at approximately noon, as she was driving eastbound on Route 6, she noticed the patch of ice in the westbound lane that caused the plaintiff's accident. She considered it a dangerous situation and called the Farmington police department to report the condition.

The following colloquy took place between both parties' counsel, the court and the witness.

"[Plaintiff's Counsel]: Okay. Now when you called the police department sometime around noon after you got home from the post office, what was the response that you received to the call that you made?

"[Russell]: They thanked me.

"[Defense Counsel]: Objection. Hearsay.

"The Court: Basis of the objection is hearsay.

"[Plaintiff's Counsel]: It's not—I'm not claiming it for the truth but for what happened.

"[Defendant's Counsel]: It's hearsay. He can bring the dispatcher in who took the call or the tape or whatever to—

"The Court: All right. I understand the objection. The objection is overruled. You can respond to the question . . . .

"[Russell]: The dispatcher thanked me and said they would call the [department]."

The plaintiff's counsel stated at trial that he was not offering the statement for the truth of the matter asserted. The dispatcher's statement, therefore, was not offered initially to show that the dispatcher had, in fact, notified the department of the ice on the curve on Route 6. The trial court, however, did not instruct the jury as to the limited use for which the testimony could be considered at the time it was proffered. The trial court also did not address this evidence in its charge. We assume, therefore, for purposes of our discussion, that the jury considered this evidence as it considered all other properly admitted evidence to which the trial court did not limit its deliberation.

The defendant argues that "[e]ven if the evidence was properly admitted, as limited, it was incumbent upon the court to instruct the jury on the limited purpose for which that evidence could be used. Specifically, it was incumbent upon the court to instruct the jury to consider the statement only on the issue of the declarant's intentions."

Because we conclude that the jury was allowed to consider this evidence without limitation, we address the plaintiff's argument that the statement was admissible as an exception to the hearsay rule. The plaintiff, in her brief, claims that Russell's testimony is admissible as an exception to the hearsay rule as a statement of present intent to prove a future action. The plaintiff

cites *State* v. *Santangelo*, 205 Conn. 578, 592, 534 A.2d 1175 (1987), for the proposition that "[a] declaration indicating a present intention to do a particular act in the immediate future, made in good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed." *Santangelo*, however, does not apply in this situation. Our Supreme Court stated in that case that "[t]he hearsay statements of *an unavailable declarant* . . . [to prove future acts] are admissible . . . ." (Emphasis added.) Id. Further, this court has acknowledged the Supreme Court's rule requiring the declarant to be unavailable. *State* v. *Jurgensen*, 42 Conn. App. 751, 757, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996).

The plaintiff made no showing that the dispatcher who answered Russell's call was unavailable as our courts have defined that concept.[3] Evidence was presented that that dispatcher is retired, but no evidence was presented that the dispatcher could not be located and subpoenaed. We conclude that the trial court exceeded its discretion in admitting Russell's testimony as to what the dispatcher said. This conclusion does not automatically lead to a new trial, however. "We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). Russell's statement regarding the dispatcher's intention to notify the department was offered as evidence that

---

[3] Connecticut has adopted the definition of unavailability found in Federal Rule of Evidence 804 (a). See *State* v. *Middlebrook*, 51 Conn. App. 711, 726, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999).

the department had actual notice of the defective condition of the highway so that it could be found liable under the defective highway statute. In part II of this opinion, we hold that the department was liable under the statute because it had constructive notice of the defect. The hearsay portion of Russell's statement, which concerned the dispatcher's intention to notify the department, is immaterial to the issue of constructive notice, and we find that its admission was harmless error because it was unlikely to have affected the result of the trial.

## II

The defendant next claims that the trial court improperly denied his motions to set aside the verdict and for a directed verdict because there was insufficient evidence for the jury reasonably to have found that the department had either actual or constructive notice of the alleged defect.[4] Because we conclude that there was sufficient evidence for the jury reasonably to have found that the department had constructive notice of the alleged defect, we do not discuss the defendant's claim regarding actual notice.

"Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. Where the claim is that the evidence produced did not satisfy the burden of proof factually, the duty of an appellate court is well established. An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly

[4] The jury was given interrogatories. The jury answered yes to both of the separate questions as to whether the department had actual and constructive notice of the alleged defect.

erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . The probative force of conflicting evidence is for the trier to determine. *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 257, 524 A.2d 610 (1987)." (Citations omitted; internal quotation marks omitted.) *Jones* v. *Ippoliti*, 52 Conn. App. 199, 206–207, 727 A.2d 713 (1999). "[W]e must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . ." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 113, 708 A.2d 937 (1998).

The defendant next claims that there was insufficient evidence to support a finding that the department had either actual or constructive notice of the defect. Because the interrogatories show that the jury found that the department had both actual and constructive notice and because we find in this opinion that there was sufficient evidence to support the finding that the department had constructive notice of the defect, there is no need for us to reach the issue of whether the evidence was sufficient to support a finding of actual notice.

As we have already noted, the state must have notice of the actual defect, not the underlying conditions that naturally produce that defect, for the plaintiff to succeed. See *Carl* v. *New Haven*, supra, 93 Conn. 628. "Whether or not the defect had existed for a length of time sufficient to constitute constructive notice is a question of fact for the jury and unless the period of time is such that but one conclusion could be found, its determination should be left to the trier." *Baker* v. *Ives*, 162 Conn. 295, 307, 294 A.2d 290 (1972). The defendant can be charged with having constructive notice of a defect when "it is of such a nature and

duration that a *reasonable inspection* would have disclosed the risk." (Emphasis in original; internal quotation marks omitted.) *Hall* v. *Burns,* supra, 213 Conn. 479.

"The defendant's subduty to make a reasonable inspection, i.e., investigation or detection, of a dangerous condition on the highway is therefore a factor to be considered in determining whether the defendant received actual or constructive notice of the alleged defect and had a reasonable opportunity to remedy it. The extent of the duty to inspect varies with the particular circumstances of the case. . . . The duty to make a reasonable inspection . . . absent actual notice, depends upon the nature of the defect and the length of time it existed. The circumstances of each case must be examined." Id., 479–80.

The jury had before it evidence of the Eagan accident, which occurred only twenty-four hours prior to the plaintiff's accident. The Eagan accident, as previously noted, was remarkably similar to the plaintiff's. In fact, when Richard Ross, the Farmington police dispatcher, called the department regarding the ice patch on February 19, 1993, he told the department that, "we have the usual icy condition on Route 6 just in the area of Reservoir Road."

An internal department memorandum regarding the plaintiff's notice of claim provides: "The area in question is located in a shaded area and is sanded and monitored on a daily basis during the winter season." Additionally, the department had a snow and ice policy manual that was also entered in evidence. Section 2.10 of the manual regarding isolated ice patches provides: "When the main body of the travelway is bare, ice may form at isolated or disconnected locations following thawing, frost action or seepage. Wherever possible an attempt shall be made to eliminate these isolated ice patches at their source. Where this is not possible such

ice patches *must be kept thoroughly sanded.* Hazardous conditions developing at such locations should be anticipated at the time of lowering temperatures and treated by sanding wet pavement areas in advance of actual ice formation. It is a function of the General Supervisor to investigate the causes of such ice formations and to eliminate the source." (Emphasis added.) Paul Zagorski, general supervisor of the department's Farmington garage, originally testified that he did not consider the area of the accident a "problem area," but on direct examination the plaintiff asked him to repeat his deposition testimony to the same question. Zagorski, in his deposition, had stated: "[T]his was a more problem area."

The department's garage is approximately three miles from the accident site. The jury had evidence that the ice patch existed at least two and one-half hours prior to the plaintiff's accident. Zagorski admitted that, outside of business hours, the response time to a call would be within one hour.

We emphasize again that whether the department had reasonable time to discover the ice patch and to correct the defect is a proper element for the jury to consider in determining whether the department had constructive notice. See *Lemonious* v. *Burns*, 23 Conn. App. 735, 740, 583 A.2d 1328, cert. denied, 218 Conn. 903, 588 A.2d 1078 (1991). The jury had before it evidence of the department's policy actively to seek out and treat isolated ice patches. Furthermore, the department, in its internal memorandum, stated that the accident site was to be inspected daily. Whether the two and one-half hour time period between Russell's discovery of the ice patch and the accident was a reasonable time for the department to discover the problem is a question solely for the jury. While there may be conflicting evidence as to what is a reasonable time, there is no lack of evidence to suggest that a failure to discover the

defect in two and one-half hours is unreasonable. The jury interrogatory form indicates that the jury specifically found that the defendant had a reasonable time in which to correct the defect.[5] Our function is not to retry the case. We conclude that the jury had sufficient evidence on which to conclude that the department had constructive notice of the ice patch that caused the plaintiff's accident.

## III

The defendant next claims that the trial court improperly failed to charge the jury regarding General Statutes § 14-314 and improperly charged the jury on the issues of (1) notice, (2) the melting and refreezing of ice, (3) the defendant's duty to inspect and (4) the emergency doctrine.[6] We conclude that the charge, when read as a whole, in light of the evidence, was proper.

We begin with our standard of review. "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 187, 700 A.2d 38 (1997). "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect

---

[5] The jury answered yes to the following interrogatory: "Do you find that the defendant failed to use reasonable care to correct the very defect alleged, and that he had reasonable time to correct the defect?"

[6] "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue . . . M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . . Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Internal quotation marks omitted.) *Jones* v. *Ippoliti*, supra, 52 Conn. App. 201 n.4.

rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Edwards*, 247 Conn. 318, 328–29, 721 A.2d 519 (1998).

## A

The defendant first claims that the trial court improperly failed to instruct the jury on the applicability of General Statutes § 14-314.[7] We are not persuaded.

The defendant claims that because there was evidence suggesting that the plaintiff was traveling above the warning sign's recommended speed for the curve where her accident occurred, she was in violation of § 14-314. The defendant, therefore, claims that he was entitled to an instruction concerning a violation of § 14-314. While we agree with the defendant that the advisory sign and advisory speed placard are signs that the population should heed, we do not agree that an instruction with respect to § 14-314 was warranted in the present case.

---

[7] General Statutes § 14-314 provides in relevant part: "Any person . . . failing to comply with any order made pursuant to any provision of this chapter shall be fined not more than five thousand dollars or imprisoned . . . . Any person . . . failing to comply with any traffic control signal, sign, marking or other device placed and maintained upon the highway, or with any regulation adopted pursuant to any provision of this chapter, by the State Traffic Commission or the traffic authority of any city, town or borough shall be deemed to have committed an infraction, if no other penalty is provided by law. Traveling at a greater rate of speed than is reasonable as provided in section 14-218a shall not be deemed to be a failure to comply with the provisions of this section but shall be deemed to be the commission of an infraction within the provisions of said section 14-218a."

The plaintiff points out that the Regulations of Connecticut State Agencies delineate between the types of signs that the state traffic commission uses and their meaning.[8] The defendant would have us read § 14-314 to provide the state with a method of charging the driving public with an infraction for failing to obey an advisory sign. Section 14-314 indicates that the statute and the regulations are to be read so as to create a cohesive body of law. See footnote 8. Reading General Statutes § 14-314 and §§ 14-298-504 and 14-298-506 of the Regulations of Connecticut State Agencies together does not allow such a result. In further support of the plaintiff's position is the evidence from the police witnesses that a driver's failure to follow a warning sign's advice does not give rise to an infraction with which a driver can be cited. Additionally, Clifford Ferris, a department general supervisor of signs and markings, responded, "No," when asked,"[A]re yellow diamond-shaped signs used for any other purpose than warning?" The evidence clearly established that the warning sign was not enforceable. The trial court properly declined to instruct on § 14-314.

[8] Section 14-298-504 of the Regulations of Connecticut State Agencies provides: "(a) Regulatory signs give notice of traffic laws or regulations.

"(b) Warning signs call attention to conditions on or adjacent to a highway or street that are potentially hazardous to traffic operations.

"(c) Guide signs show route designations, destinations, directions, services, points of interest and other geographical, recreational or cultural information."

Section 14-298-519 (a) of the Regulations of Connecticut State Agencies provides: "*Regulatory signs shall be used to inform highway users of traffic laws or regulations that apply at given places or on given highways, disregard of which is punishable by law.*" (Emphasis added.)

Section 14-298-526 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "The Speed Limit sign shall display the limit established by law, or by regulation . . . ."

Section 14-298-553 of the Regulations of Connecticut State Agencies provides: "*Warning signs shall be used for the purpose of warning traffic of existing potentially hazardous conditions either on or adjacent to the road.*" (Emphasis added.)

The defendant also argues that he was prejudiced because the trial court had informed him, prior to closing arguments, that it intended to instruct on § 14-314. Because of the trial court's statement of intention, the defendant claims that he was improperly induced to focus on § 14-314 in his closing argument. His claim of prejudice is without merit.

We first note that the closing arguments are not included in the transcripts provided by the parties. We therefore, have no way of knowing what actually was said in closing arguments. It is the appellant's duty to provide an adequate record for review. Practice Book § 61-10. The transcript provided does reflect, however, that the trial court, after closing arguments had been presented, allowed the defendant two additional minutes to address the issue. When the defendant indicated that two minutes was insufficient, the trial court offered him five minutes to address the jury. The defendant replied: "I don't think it would be of any value." On the basis of the record provided, we conclude that the defendant failed to establish that he was prejudiced by the trial court's decision not to instruct the jury on § 14-314.

B

The defendant claims that the trial court improperly instructed the jury on the issue of actual[9] and constructive notice, specifically, that it improperly instructed on the issues of (1) prior icing, (2) the Eagan accident and (3) the snow and ice policy manual. We disagree.

1

The defendant claims that the trial court improperly charged the jury regarding the evidence of prior icing. We disagree.

---

[9] We limit our analysis to whether the charge was proper with respect to the issue of constructive notice.

The trial court charged: "Let me address first the evidence regarding an ice patch alleged to be present on Route 6 at Rattlesnake Mountain on February 19, 1993. The uses to which you can put this testimony depend upon whether you determine that the ice patch which allegedly existed on February 19, 1993, is the same ice patch as that which allegedly existed at the time of the [plaintiff's] accident. . . . If you find . . . that it was not the same ice patch, but a wholly new and different ice patch, you may not consider it as evidence of actual notice but you may consider it for the limited purpose of determining whether and when the defendant should have known of the ice patch which the plaintiff claims caused her accident on February 20, 1993. . . . Turning now to the evidence regarding conditions at times other than February 19 and 20, 1993, you may consider any such evidence only with regard to the issue of constructive notice."

We have concluded that the evidence of prior icing conditions at the accident location is admissible. The trial court's instructions adequately reflect the state of the law. In view of that conclusion, we cannot conclude that the trial court's instruction on the issue of prior icing conditions was improper.

2

The defendant next claims that the trial court's instruction regarding the Eagan accident was improper. We disagree.

The trial court instructed the jury: "You have also heard testimony regarding an automobile accident involving Matthew Eagan on February 19, 1993. You may consider that evidence only on the issue of whether the defendant had notice of the allegedly defective condition of the road prior to the plaintiff's accident and for no other purpose." The trial court's limiting instruction regarding the Eagan accident properly contained the

jury's deliberation on the issue of constructive notice. Unless there is evidence to the contrary, a jury is considered to have followed the trial court's instructions. *State* v. *Moye*, 199 Conn. 389, 396, 507 A.2d 1001 (1986). The trial court's instruction was proper.

3

The defendant's argument that the trial court's instruction regarding the snow and ice policy manual also must fail.

The trial court instructed the jury: "This testimony in evidence was also admitted into evidence for a limited purpose. Proof of a violation of provisions of the manual does not in and of itself establish plaintiff's case, nor does the manual itself set forth the law regarding the standard of care against which the defendant is to be judged.

"As I hope these instructions to you make clear, plaintiff must prove all four elements of her claim to prevail which alleges a statutory violation of General Statutes § 13a-144. However, you may consider the testimony and evidence relating to the snow and ice policy manual as a factor to be considered as you evaluate the methods and procedures the commissioner has used in attempting to fulfill his responsibility to reasonably investigate and detect highway defects. You may also consider the ice and [snow] policy manual insofar as it relates to the issue of whether the defendant had constructive notice of the defect alleged in this complaint."

The defendant argues that the trial court's instruction "permitted the jury to conclude, contrary to the law, that the defendant was required to anticipate hazardous conditions." The defendant cites *Carl* v. *New Haven*, supra, 93 Conn. 628, for the proposition that the department's duty is reactive, not anticipatory. While the

defendant's reading of *Carl* is correct, the trial court limited the jury's deliberation to the issue of whether the department acted reasonably. The jury was entitled to consider the manual in determining whether the department responded within a reasonable amount of time. "What constitutes a reasonable length of time within which the defendant should have learned of the defect . . . [is] to be determined *in the light of the particular circumstances of each case.*" (Emphasis added; internal quotation marks omitted.) *Lemonious* v. *Burns,* supra, 23 Conn. App. 740. The trial court's instruction, when read as a whole, was proper.

## C

The defendant next claims that the trial court improperly instructed the jury regarding the issue of the melting and refreezing of ice. After a thorough review of the charge, and reading it as a whole, we conclude that the defendant's claim lacks merit.

## D

The defendant next claims that the trial court improperly instructed the jury on the issue of reasonable inspection.

The trial court instructed: "You may also consider the general proposition that the greater the likelihood of danger, the greater is the amount of care required in the exercise of the duty to make *reasonable inspections.*" The trial court's instruction does not impose a heightened duty on the defendant. It merely states that the level of care must take into consideration the given circumstances. The instruction specifically states that the department must maintain a reasonable standard. Accordingly, the trial court's instruction was proper.

## E

The defendant finally claims that the trial court improperly instructed the jury on the sudden emergency doctrine.

"Whether a charge on the doctrine of sudden emergency was applicable is determined by the claims of proof advanced by the parties." *Miller* v. *Porter*, 156 Conn. 466, 468, 242 A.2d 744 (1968). "Evidence was required which would be sufficient to support a finding (1) that an emergency actually existed, (2) that the perilous situation was not created by the [plaintiff], and (3) that the [plaintiff], confronted with the emergency, chose a course of action which would or might have been taken by a person of reasonable prudence in the same or a similar situation." Id., 469.

There was evidence that the plaintiff encountered an emergency that she did not create. In response, she attempted to tap her brakes to regain control of her car and, when that failed, she attempted to steer to regain control. Each of the three elements of *Miller* has been met.

The trial court instructed: "Now, in your deliberations if you find that the plaintiff . . . was confronted with an emergency not of her own making, that does not excuse her from the use of due care, but it is a factor and you may consider it a significant factor in judging her conduct. The test would be the care of an ordinarily prudent person situated as [the plaintiff] was situated and confronted with such an emergency." The trial court's instruction accurately reflected the sudden emergency doctrine and correctly informed the jury concerning the plaintiff's duty to exercise reasonable care under the emergent circumstances. The trial court's instruction, when read in its entirety, does not misstate the facts or the relevant law and, accordingly, we conclude that it was proper.

The judgment is affirmed.

In this opinion the other judges concurred.